**PENNOBSCOT, INC., a Colorado Corporation, and Fred Ramsey, Plaintiffs-Appellants,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF PITKIN COUNTY, COLORADO, Defendant-Appellee.**

No. 80SC340.

Supreme Court of Colorado, En Banc.

March 22, 1982.

Erin L. Fernandez, Jon K. Mulford, Aspen, for plaintiffs-appellants.

Sandra M. Stuller, Aspen, for defendant-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Marshall D. Brodsky, Asst. Atty. Gen., Denver, for amicus curiae Atty. Gen. in support of the Bd. of County Commissioners.

ROVIRA, Justice.

Pennobscot, Inc., and Fred Ramsey (petitioners) brought an action seeking declaratory relief in the District Court of Pitkin County. They challenge the authority of the Board of County Commissioners (County) to adopt Pitkin County Resolution 74–115 amending the county subdivision regulations to include within their scope the dividing of a tract of real estate into parcels, each comprising thirty-five or more acres, none of which is intended for use by multiple owners. The district court upheld the resolution as being a valid exercise of the county's regulatory authority.

Petitioners perfected an appeal to the Colorado Court of Appeals and concurrently filed a petition for a writ of certiorari pursuant to C.A.R. 50. We granted certiorari prior to judgment in the court of appeals. The judgment of the district court is reversed.

On December 23, 1974, the County adopted a resolution amending the county subdivision regulations. The amendment broadened the definition of subdivision by deleting language exempting divisions of property which resulted in parcels of land, each comprising thirty-five or more acres, none of which was intended for use by multiple owners. The deleted language comported with the statutory exemption found in section 30–28–101(10)(b), C.R.S. 1973 (1977 Repl. Vol. 12).[1]

The following rationale and authority was cited in support of the County's decision to depart from the statutory definition:

"2. While Senate Bill 35 [section 30–28–101(10)(b), C.R.S. 1973 (1977 Repl. Vol. 12)], adopted in 1972, by its terms did not apply to divisions of land into parcels of larger than thirty-five acres, section [30–28–133(1), C.R.S. 1973 (1977 Repl. Vol. 12)] provides in significant part that local 'regulations shall be *no less stringent* than the regulations promulgated by the Colorado land use commission' (emphasis added), thus leaving to local governments the power to make regulations more strict, in keeping with the autonomy and authorization to counties under Chapter 106 [Titles 24, 29 and 30, C.R.S. 1973] to provide for and make their own planning decisions.

"3. Moreover, House Bill 1034, 'The Local Government Land Use Control Enabling Act of 1974,' [sections 29–20–101 to –107, C.R.S. 1973 (1977 Repl.Vol. 12)] added a new article to the county land use chapter, which in section [29–20–104], and other such sections, very broadly delegated additional authority in the planning field to local governments.

"4. The division of land into parcels is itself a significant planning decision that ought not to be permitted absent evaluation of the proposed planning decision in accordance with the criteria set forth in Chapter 106 [Titles 24, 29 and 30, C.R.S. 1973] and the Pitkin County Subdivision Regulations.

"5. It is necessary to regulate the division of land into parcels larger than thir-

---

1. Section 30–28–101(10)(b), C.R.S. 1973 (1977 Repl.Vol. 12) provides:

"(b) The terms 'subdivision' and 'subdivided land', as defined in paragraph (a) of this subsection (10), shall not apply to any division of land which creates parcels of land each of which comprises thirty-five or more acres of land and none of which is intended for use by multiple owners."

ty-five acres so as to provide for the planned and orderly use of land and the protection of the environment of Pitkin County, which environment is especially significant in an area the economy of which is in large part based upon tourism and the attractiveness of the area for tourism and recreational purposes. Any division of land to which these amendments would apply without evaluation according to the criteria set forth in Chapter 106 [Titles 24, 29 and 30, C.R.S. 1973] and in the Pitkin County Subdivision Regulations, and the concomitant development of, *e.g.*, access roads to such parcels significantly affects and intrudes upon the decreasing wildlife winter ranges and wildlife migration routes, which are important not only for aesthetic and tourism purposes, but are also important to the economy of Pitkin County. "6. Moreover, divisions of land without review involve significant problems of drainage, visual pollution, slope instability, and create land use patterns that should be established only in a planned, orderly manner." [2]

In 1975, Thomas and Herma McCary divided their ranch property into six parcels, each comprising thirty-five or more acres, not intended for use by multiple owners. One of the parcels was conveyed to the petitioner Pennobscot, Inc. In 1980, petitioner Fred Ramsey entered into a contract with Pennobscot in which he agreed to purchase its parcel of land. The contract contained a contingency clause which required the seller to obtain "a court order or agreement from Pitkin County that the sale of

the property does not violate Pitkin County valid subdivision regulations."

Petitioners sought declaratory relief pursuant to sections 13–51–101 to –115, C.R.S. 1973. They argued that the County was without authority to delete the exemption of thirty-five acre or larger parcels and to regulate the division of their property as a subdivision because the resulting parcels were statutorily exempt from subdivision regulation pursuant to section 30–28–101(10)(b), C.R.S. 1973 (1977 Repl.Vol. 12). They sought a declaration that Resolution 74–115 was invalid and that Ramsey could not be precluded from obtaining a building permit or be enjoined from using the land on the ground that an application for subdivision had not been made or that County approval of the final plat had not been obtained.

The district court found that the County had the authority to adopt the resolution amending the county subdivision regulations. In reaching its decision, the court attempted to harmonize the provisions of the county planning statute controlling subdivision regulation [3] and the provisions of the Local Government Land Use Control Enabling Act of 1974 (Land Use Act)[4] so as to promote consistency. The court construed the various statutory provisions as imposing a requirement that counties regulate subdivision parcels of less than thirty-five acres while still permitting subdivision regulation of any size parcel pursuant to the powers conferred by the Land Use Act. Finally, the court concluded that the subdivision regulations, here imposed on all size parcels, had a reasonable connection to the

2. Citation within brackets indicates the location of the material in the 1973 revision of the Colorado statutes.

3. Section 30–28–133, C.R.S. 1973 (1977 Repl. Vol. 12 & 1981 Supp.) provides *inter alia*:

"(1) Every county in the state which does not have a county planning commission on July 1, 1971, shall create a county planning commission in accordance with the provisions of section 30–28–103. Every county planning commission in the state shall develop, propose, and recommend subdivision regulations, and the board of county commissioners shall adopt and enforce subdivision

regulations for all land within the unincorporated areas of the county in accordance with this section not later than September 1, 1972...."

Section 133 further provides guidelines and directives concerning the scope and nature of the subdivision regulations. Section 30–28–101(10)(b), C.R.S. 1973 (1977 Repl.Vol. 12), of the county planning statute provides an exemption from subdivision regulation. *See* note 1 *supra*.

4. Sections 29–20–101 to –107, C.R.S. 1973 (1977 Repl.Vol. 12).

criteria listed in section 104 of the Land Use Act. Accordingly, judgment was entered in favor of the County.

The sole issue presented is whether the County has the authority to regulate, as a subdivision, the division of a tract of land into parcels, each comprising thirty-five or more acres, none of which is intended for use by multiple owners.

■ A county is a political subdivision of the state and, as such, possesses only those powers expressly granted by the constitution or delegated to it by statute. Further, a delegation of power carries with it a conferral of all implied powers reasonably necessary to the proper exercise of the expressly delegated power. *Board of County Comm'rs v. Pfeifer*, 190 Colo. 275, 546 P.2d 946 (1976); *Board of County Comm'rs v. State Bd. of Social Servs.*, 186 Colo. 435, 528 P.2d 244 (1974); *Board of County Comm'rs v. Love*, 172 Colo. 121, 470 P.2d 861 (1970); *Farnik v. Board of County Comm'rs*, 139 Colo. 481, 341 P.2d 467 (1959).

■ Here, there is no claim of power pursuant to a constitutional grant. Therefore, the County's authority to redefine the term "subdivision" in its subdivision regulations must be supported by a statutory delegation of power from the state in order to withstand judicial scrutiny. The County cites the provisions of the county planning statute, sections 30–28–101 to –137, C.R.S. 1973 (1977 Repl.Vol. 12 & 1981 Supp.), and the provisions of the Land Use Act, sections 29–20–101 to –107, C.R.S. 1973 (1977 Repl. Vol. 12), as the source of its authority to adopt Resolution 74–115 altering the defini-tion of subdivision in the county subdivision regulations.

Section 30–28–133, C.R.S. 1973 (1977 Repl.Vol. 12 & 1981 Supp.), of the county planning statute specifically addresses the promulgation and adoption of subdivision regulations by the counties. It provides a comprehensive outline of directives and guidelines addressed to county governments. Under this provision, counties are required to develop and adopt regulations controlling the subdivision of property.[5]

The enactment of section 133 evidenced an intent on the part of the legislature to delegate the power to regulate the subdivision of property to county governments. Moreover, the delegation included a directive that the counties implement subdivision regulations which comport with the provisions of the statute. In the event that a county fails to comply with the legislative directive, section 133 authorizes the state land use commission to promulgate subdivision regulations for the county. Regulations adopted by the county, thereafter, are to be "no less stringent than" the state land use commission regulations.[6]

The legislature specifically defined the term, subdivision, for the purposes of the county planning article. Section 30–28–101(10)(a), C.R.S. 1973 (1977 Repl.Vol. 12 & 1981 Supp.), defines subdivision as "any parcel of land . . . which is to be used for . . . multiple-dwelling units . . . or which is divided into two or more parcels, separate interests, or interests in common, unless exempted under paragraph (b) . . . of this subsection (10)." Subsection (10)(b) states

---

5. Section 133 provides an extensive list of requirements to be imposed upon subdividers pursuant to the county regulations. These requirements include, *inter alia*, the submission of surveys, plans, data, and studies addressing a wide range of matters such as the ownership of the property; site characteristics; the proposed layout of the development; the estimated water requirements; the availability of water; and the estimated cost and proposed method of financing streets, a water distribution system, a sewage and storm drainage system, and other such utilities which the developer of the subdivision may be required to provide.

6. The County cited this language in its statement of authority and purpose which prefaced Resolution 74–115 for the proposition that section 133 left to "local governments the power to make regulations more strict, in keeping with the autonomy and authorization to counties" under this chapter. Given the narrow context in which the language is used in section 133, however, we must conclude that it does not purport to accomplish a delegation of the power to undertake the action here in question.

that the term, subdivision, "shall not apply to any division of land which creates parcels of land each of which comprises thirty-five or more acres of land and none of which is intended for use by multiple owners."

By exempting divisions of property which result in parcels of land comprised of thirty-five or more acres, none of which is intended for use by multiple owners from the definition of subdivision, the legislature gave the counties no authority to impose subdivision regulations on these larger tracts. Section 133 of the county planning statute delegates only the authority to pass subdivision regulations controlling smaller parcels of real estate. Therefore, it follows that the County's reliance upon the provisions of the county planning statute is misplaced.

The County contends, however, that the provisions of the Land Use Act provide it with the authority to impose subdivision regulations upon divisions of land which result in large, single-owner parcels. Section 104 of the Land Use Act provides that local government has the authority to plan for and regulate land use by:

"(e) Regulating the location of activities and developments which may result in significant changes in population density;

(f) Providing for phased development of services and facilities;

(g) Regulating the use of land on the basis of the impact thereof on the community or surrounding areas; and

(h) Otherwise planning for and regulating the use of land so as to provide planned and orderly use of land and protection of the environment in a manner consistent with constitutional rights."

Undoubtedly, the powers conferred upon the county pursuant to this provision are quite broad. However, we do not believe that the Land Use Act confers the authority upon the county to adopt a definition of subdivision in its regulations which is contrary to the express statutory definition found in the county planning statute.

■ Several considerations require this result. First of all, it is well established

that subdivision regulations impose restrictions upon the free alienation of property in derogation of common law. Therefore, the power of the County to adopt subdivision regulations must be strictly construed. *Board of County Comm'rs v. Pfeifer, supra.* Additionally, section 107 of the Land Use Act specifically provides that where "other procedural or substantive requirements for the planning for or regulation of the use of land are provided by law, such requirements shall control."

Finally, a review of the evolution of the definition of subdivision in the county planning statute discloses no evidence of a legislative intent to allow counties to control the division of land into parcels of thirty-five or more acres pursuant to subdivision regulations. The thirty-five acre parcel exemption was first introduced by the legislature in 1972. Colo.Sess.Laws 1972, ch. 81, 106–2–33(3) at 499. It remains unchanged. *Compare* Colo.Sess.Laws 1972, ch. 81, 106–2–33(3) at 499 *with* section 30–28–101(10)(b), C.R.S. 1973 (1977 Repl.Vol. 12). We note, however, that the definition of subdivision was changed, in a manner not relevant to the issue before the court, in 1974 during the same legislative session in which the Land Use Act was passed. *See* Colo.Sess.Laws 1974, ch. 79, 106–2–33 at 334; section 30–28–101(10)(a), C.R.S. 1973 (1977 Repl.Vol. 12). The fact that the legislature considered the definition of subdivision found in section 101(10) in the same session that it enacted the Land Use Act leads us to the conclusion that the legislature did not intend that the Land Use Act confer the authority to adopt subdivision regulations covering parcels of land which are specifically excluded from the provisions of the county planning statute. Had it wished to allow the counties to regulate the subdivision of land which results in thirty-five acre parcels, the legislature could have so indicated by amending the pertinent exclusion in the county planning statute or by clearly delegating the authority to the county in the Land Use Act. Further, the legislature has since amended the statutory definition of subdivision with-

out altering the thirty-five acre exemption. *See* Colo.Sess.Laws 1977, ch. 412, 30–28–101 at 1453; Colo.Sess.Laws 1977, ch. 413, 30–28–101 at 1455.

Accordingly, we conclude that the specific statutory definition of subdivision found in section 30–28–101(10)(b), C.R.S. 1973 (1977 Repl.Vol. 12), is binding upon the County in the absence of a clear legislative mandate providing otherwise. Here, the county attempted to impose subdivision regulations upon the property in question. The exemption cannot be ignored. If the legislature intended to delegate the authority to impose subdivision regulations without regard to the size or ownership of the resulting parcels, then a clearer statement, evidencing that intent, is necessary.

The judgment of the district court is reversed.

DUBOFSKY and QUINN, JJ., dissent.

QUINN, Justice, dissenting:

In my view section 30–28–133(1), C.R.S. 1973 (1977 Repl.Vol. 12), of the County Planning Statute does not prohibit the county from adopting subdivision regulations for parcels of land comprising 35 acres or more and not intended for use by multiple owners. Any doubt in this respect is resolved by the Local Government Land Use Control Enabling Act of 1974 (Land Use Act), section 29–20–101 *et seq.*, C.R.S. 1973 (1977 Repl.Vol. 12), which grants to local governments broad regulatory powers over land use within their respective jurisdictions. Accordingly, I respectfully dissent.

Section 30–28–133(1) provides in part:
"Every county in the state which does not have a county planning commission on July 1, 1971, shall create a county planning commission in accordance with the provisions of section 30–28–103. Every county planning commission in the state shall develop, propose, and recommend subdivision regulations, and the board of county commissioners shall adopt and enforce subdivision regulations for all land within the unincorporated areas of the county in accordance with this section not later than September 1, 1972. . . . In the event the board of county commissioners of any county in this state has not adopted subdivision regulations by September 2, 1972, the Colorado land use commission may promulgate such subdivision regulations for such areas of the county for which no subdivision regulations exist. Such subdivision regulations shall be in full force and effect and enforced by the board of county commissioners. If at any time thereafter the board of county commissioners adopts its own subdivision regulations for land within the unincorporated areas of the county, such regulations shall be no less stringent than the regulations promulgated by the Colorado land use commission under this subsection (1). . . . "

Section 30–28–101(10)(a), C.R.S. 1973 (1981 Supp.) defines "subdivision" or "subdivided land" to include, in pertinent part, "any parcel of land in the state, which is to be used for condominiums, apartments, or any other multiple-dwelling units . . . or which is divided into two or more parcels, separate interests, or interests in common, unless excepted under paragraph (b) . . . of this subsection 10." Subsection 30–28–101(10)(b), C.R.S. 1973 (1977 Repl.Vol. 12), excepts from this statutory definition "any division of land which creates parcels of land each of which comprises thirty-five or more acres of land and none of which is intended for use by multiple owners."

I interpret section 30–28–133(1) as a mandate to counties to regulate subdivisions as defined in subsection 30–28–101(10)(a), and not as a prohibition from regulating parcels comprising 35 acres or more. If the legislature intended section 30–28–133(1) as a prohibition only, then I am at a loss to explain why this same statute expressly authorizes a county to adopt "its own subdivision regulations for land within the unincorporated areas of the county," so long as such regulations are "no less stringent than the regulations promulgated by the Colorado land use commission under this subsection (1)." The conclusion I draw from the language of

section 30–28–133(1) is that the legislature intended to impose upon counties a duty to adopt subdivision regulations for those parcels of land described in section 38–20–101(10)(a) which are less than 35 acres without, however, restricting their authority to adopt subdivision regulations for parcels of land exceeding in size those within the counties' statutory duty to regulate.

This conclusion is consistent with the authority conferred upon counties by the Land Use Act, section 29–20–101 *et seq.* The legislative intent to confer upon units of local government, such as counties, expansive powers of subdivision regulation is apparent from the legislative declaration in section 29–20–102 of the Land Use Act:

"The general assembly hereby finds and declares that in order to provide for planned and orderly development within Colorado and a balancing of basic human needs of a changing population with legitimate environmental concerns, the policy of this state is to clarify and provide broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions...."

Section 29–20–104 of this act resolves any doubt about the scope of a county's authority in the matter of land use regulation. That section provides:

"(1) Without limiting or superseding any power or authority presently exercised or previously granted, each local government within its respective jurisdiction has the authority to plan for and regulate the use of land by:

"(a) Regulating development and activities in hazardous areas;

"(b) Protecting lands from activities which would cause immediate or foreseeable material danger to significant wildlife habitat and would endanger a wildlife species;

"(c) Preserving areas of historical and archaeological importance;

"(d) Regulating, with respect to the establishment of, roads on public lands administered by the federal government; this authority includes authority to prohibit, set conditions for, or require a per-

mit for the establishment of any road authorized under the general right-of-way granted to the public by 43 U.S.C. 932 (R.S. 2477) but does not include authority to prohibit, set conditions for, or require a permit for the establishment of any road authorized for mining claim purposes by 30 U.S.C. 21 et seq., or under any specific permit or lease granted by the federal government;

"(e) Regulating the location of activities and developments which may result in significant changes in population density;

"(f) Providing for phased development of services and facilities;

"(g) Regulating the use of land on the basis of the impact thereof on the community or surrounding areas; and

"(h) Otherwise planning for and regulating the use of land so as to provide planned and orderly use of land and protection of the environment in a manner consistent with constitutional rights."

These demographic and ecological objectives are impossible to achieve if a county's subdivision authority over land use control is limited to parcels comprising less than 35 acres.

The majority, while conceding that the Land Use Act represents a grant of broad powers to local governments, paradoxically construes the act to prohibit a county from adopting any definition of subdivision different from that contained in section 30–28–101(10) of the County Planning Statute. It does this by interpreting section 29–20–107 of the Land Use Act as somehow transforming this statutory definition of "subdivision" in the County Planning Statute into the full measure of a county's power under the Land Use Act with respect to subdivision regulations. I believe the majority reads far too much into section 29–20–107. That section states:

"Where other procedural or substantive requirements for the planning for or regulation of the use of land are provided by law, such requirements shall control."

This section, in my opinion, does no more than make clear to a county that, in exercis-

ing its authority under the Land Use Act, it must not ignore the specific mandate of the County Planning Statute to adopt subdivision regulations for parcels of land encompassed within the statutory definition of "subdivision" in section 30–28–101(10)(a). The majority's conclusion that a county has no power to adopt a definition of subdivision which includes tracts of land comprising 35 acres or more simply cannot be reconciled with the statutory scheme contemplated by the Land Use Act. Such construction tends to relegate the Land Use Act to an enigmatic statutory redundancy without purpose or effect.

It is presumed that the general assembly in enacting a statute intended it to be effective. Section 2–4–201(1)(b), C.R.S. 1973 (1980 Repl.Vol. 1B). The provisions of the County Planning Statute, section 30–28–101 et seq., and the Land Use Act, section 29–20-101 et seq., are in pari materia and should be construed together in order to effectuate the object sought to be attained by the legislature. Section 2–4–203(1)(a), C.R.S. 1973 (1980 Repl.Vol. 1B). The legislative object, I believe, is to impose upon counties the duty to adopt and enforce subdivision regulations for those subdivisions defined in section 30–28–101(10)(a) and comprising less than 35 acres, while at the same time to permit counties to adopt and enforce reasonable subdivision regulations with respect to larger tracts of land in order to achieve an orderly development consistent with basic human needs and legitimate environmental concerns.

In my opinion the district court properly harmonized the County Planning Statute and the Land Use Act so as to authorize the county to exercise subdivision authority to regulate parcels comprising 35 acres or more. Therefore, I would affirm the judgment of the district court.

I am authorized to say that Justice Dubofsky joins me in this dissent.