STATE of Colorado, ex rel. Gale NOR-TON, in her official capacity as Attorney General for the State of Colorado; and Roy Romer, in his official capacity as Governor of the State of Colorado, Petitioners,

v.

BOARD OF COUNTY COMMISSIONERS OF MESA COUNTY and Richard Claussen, in his official capacity as Sheriff of Mesa County, Respondents.

No. 94SA334.

Supreme Court of Colorado, En Banc.

June 5, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Denver, for petitioners.

Maurice Lyle Dechant, Mesa County Atty., Alan N. Hassler, Asst. Mesa County Atty., Grand Junction, for respondents.

Hall & Evans, L.L.C., Thomas J. Lyons, Denver, for amicus curiae Colorado Counties, Inc.

David W. Broadwell, Denver, for amicus curiae Colorado Municipal League.

Justice ERICKSON delivered the Opinion of the Court.

This is an original proceeding seeking mandamus, pursuant to section 3 of article VI of the Colorado Constitution [1] and C.A.R. 21, to require respondents to continue to provide and maintain courthouse facilities and sheriff services to secure the courthouse in Mesa County. Petitioners the State of Colorado and Roy Romer in his official capacity as Governor of the State of Colorado (collectively State) sought a writ of mandamus. We issued a rule to show cause why relief in the nature of mandamus should not be granted. Respondents the Board of County Commissioners of Mesa County (Board) and Richard Claussen in his official capacity as Sheriff of Mesa County (Sheriff) answered the rule to show cause. The issues have been thoroughly briefed. We now make the rule to show cause absolute and order that respondents continue to provide and maintain the courthouse in Mesa County and that the Sheriff provide security for the operation and protection of the courts.

I

Each county is required, "at its own expense," to "provide a suitable courthouse, a sufficient jail, and other necessary county buildings and keep them in repair." § 30–11–104(1), 12A C.R.S. (1994 Supp.). Besides providing adequate courtrooms, "[t]he board of county commissioners in each county shall continue to have the responsibility of providing and maintaining adequate ... court facilities including janitorial service...." § 13–3–108(1), 6A C.R.S. (1987); *see also* § 13–6–304, 6A C.R.S. (1987) ("The county commissioners shall provide court facilities at the county seat and are authorized to do so elsewhere."). To provide security for the courts "a district or county judge shall have the assistance of the county sheriff...." § 13–1–114(2), 6A C.R.S. (1987).

In the November 1992 general election, the voters of the State of Colorado passed a

1. Colo. Const. art. VI, § 3 provides in pertinent part:
    The supreme court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, injunction, and such other original and remedial writs as may be provided by rule of court with authority to hear and determine the same; and each judge of the supreme court shall have like power and authority as to writs of habeas corpus.

constitutional amendment known as the Taxpayers' Bill of Rights (Amendment 1). Section 20(9) of Amendment 1 provides:

> **State Mandates.** Except for public education through grade 12 or as required of a local district by federal law, a local district may reduce or end its subsidy to any program delegated to it by the general assembly for administration. For current programs, the state may require 90 days notice and that the adjustment occur in a maximum of three equal annual installments.

Colo. Const. art. X, § 20(9).

On May 26, 1994, the Board informed the state court administrator that the Chief Judge of the Twenty–First Judicial District (Chief Judge) had orally requested Mesa County to "install and maintain significant security measures...." The Board claimed the state court administrator, and not Mesa County, was responsible for additional security measures. On June 7, 1994, the Chief Judge issued a written request to the Board and the Sheriff asking that courthouse security be provided.

In his written request the Chief Judge stated that citizens and court employees have increasingly become the subjects of violent acts. Three of the four district court judges have been targets of serious physical threats by persons who had recently been released from prison or were about to be released.

The Chief Judge provided an example of the increasing violence at courthouses. In 1988, when a defendant charged with sexual assault was being transported to a district court, his wife maced the Sheriff's deputy and armed the defendant with a gun she had smuggled into the courthouse. She also had a gun, and they held three courthouse employees hostage and threatened to detonate explosives, which they claimed to have brought into the building. The hostages were released, but the defendant's wife died of a gunshot wound. The courthouse was not equipped to provide protection from the commission of violent acts or security against weapons being brought into the courthouse.

The Chief Judge stated that the Board and the Sheriff could provide immediate security without capital construction expenditures. He requested that the Board and the Sheriff, within ten days, take the necessary steps to prevent weapons from being brought into the courthouse. On June 8, 1994, the Chief Judge rescinded an order allowing bonds to be set prior to an arrestee's first appearance in court. He maintained that the bonds were "untenable when considering public safety issues."

On June 13, 1994, the state court administrator notified the Board that maintenance of the state court system is a constitutional mandate, and the Board could not avoid exercising or performing inherent executive duties. On June 15, 1994, pursuant to section 20(9), the Board informed the State of its decision to terminate its responsibilities to the state court system. The termination included, without limitation, the following:

1. Responsibilities and subsidies for provision of a suitable courthouse, pursuant to 30–11–104, 12A, C.R.S.

2. Responsibilities and subsidies pursuant to 13–3–108, 6A, C.R.S.

3. Responsibilities and subsidies pursuant to 13–6–304, 6A, C.R.S.

4. Responsibilities and subsidies for costs of the Mesa County Sheriff for attending courts of record and for transport of prisoners.

5. Responsibilities and subsidies for costs of the Mesa County Sheriff for provision of court security pursuant to 13–1–114(2), [6A] C.R.S.

6. Responsibilities and subsidies for court and/or courthouse security.

7. Responsibilities and subsidies for Twenty-first Judicial District entities such as, without limitation, judges, probation, judicial administrator, and court clerk.

8. Any and all responsibilities and subsidies for courts, court facilities, judicial facilities, and judicial district facilities and programs.

The State contends that counties may not reduce or eliminate their responsibilities to provide court facilities including security for the safe operation of the courts. We agree.

## II

■ "Mandamus is an extraordinary remedy which may be used to compel performance by public officials of a plain legal duty devolving upon them by virtue of their office or which the law enjoins as a duty resulting from the office." *Sherman v. Colorado Springs Planning Comm'n,* 763 P.2d 292, 295 (Colo.1988). A three-part test must be satisfied before mandamus is issued. *Gramiger v. Crowley,* 660 P.2d 1279, 1281 (Colo. 1983). First, a plaintiff must have a clear right to the relief sought. *Sherman,* 763 P.2d at 295; *Gramiger,* 660 P.2d at 1281. Second, a defendant must have a clear duty to perform the act requested. *Sherman,* 763 P.2d at 295; *Gramiger,* 660 P.2d at 1281. Third, there must be no other available remedy. *Sherman,* 763 P.2d at 295; *Gramiger,* 660 P.2d at 1281. Because section 20(9) of Amendment 1 does not relieve a county from its continuing responsibility to provide courthouses and court services, mandamus is an appropriate remedy in the present case. *See Lawson v. Pueblo County,* 36 Colo.App. 370, 373, 540 P.2d 1136, 1138 (1975).

■ It is our responsibility to exercise original jurisdiction where the interests of the state at large are directly involved or where " 'the liberty of its citizens [is] menaced.' " *People v. Kenehan,* 55 Colo. 589, 602, 136 P. 1033, 1037 (1913) (quoting *Wheeler v. Northern Colo. Irrigation Co.,* 9 Colo. 248, 253, 11 P. 103, 105 (1886)). When a case presents an issue of a public nature that "affects the whole state, or its government, ... then unquestionably it is the duty of this court to assume original jurisdiction and to issue such writs as it is empowered to do for the purpose of giving the relief demanded." *Id.* at 603, 136 P. at 1038. The interests of the state at large are affected because courthouses are maintained in all of Colorado's sixty-three counties. If Mesa County may "turnback" or cast aside its duties to provide court facilities, then all other counties would have the same right. Allowing the counties to "turnback" their courthouse responsibilities would significantly impact the effectiveness of the judicial branch of government. Because the implications of one county abdicating its responsibilities to provide, maintain, and secure a courthouse affects the whole state, we exercise our original jurisdiction over the present case.

## III

■ Section 20(9) of Amendment 1 allows a local district to "reduce or end its *subsidy* to any program delegated to it by the general assembly for administration." Colo. Const. art. X, § 20(9) (emphasis added). The result in the present case is controlled by our decision in *Romer v. Board of County Commissioners,* 897 P.2d 779 (Colo.1995). In *Romer,* we held that Weld County's contribution to the state social services program was not a "subsidy" under section 20(9). *Romer,* 897 P.2d at 787.

Concentrating on Colorado's state-county relationship, we emphasized that "[a] government cannot subsidize itself." *Id.* at 782. We noted that "[a] county is not an independent governmental entity existing by reason of any inherent sovereign authority of its residents; rather, it is a political subdivision of the state, existing only for the convenient administration of the state government, created to carry out the will of the state." *Id.* at 782 (quoting *Board of County Comm'rs v. Love,* 172 Colo. 121, 125, 470 P.2d 861, 862 (1970)). We concluded that "[w]hen a county attempts to subsidize the state, the state, through a county, contributes to itself." *Id.* at 782. The rationale of *Romer* dictates our conclusion that a county's duties to the state court system, including security, may not be reduced or ended pursuant to section 20(9) of Amendment 1.

Accordingly, we make the rule to show cause absolute.

ROVIRA, C.J., dissents.

LOHR, J., specially concurs.

Chief Justice ROVIRA, dissenting:

I dissent for the reasons stated in *Romer v. Board of County Commissioners,* 897 P.2d 779 (Colo.1995).

Justice LOHR specially concurring:

The majority "make[s] the rule to show cause absolute and order[s] that respondents continue to provide and maintain the courthouse in Mesa County and that the Sheriff provide security for the operation and protection of the courts." Maj. op. at 789. Although the result obtained by the majority in the present case may also be supportable on another basis, I consider our decision in *Romer v. Board of County Comm'rs of Weld County*, 897 P.2d 779 (Colo.1995) controlling based upon the rationale adopted in that opinion. Therefore, I specially concur in the majority opinion in the present case.