897 P.2d 779 (1995)
Roy ROMER, in his official capacity as Governor of the State of Colorado; Karen Beye, in her official capacity as the Executive Director of the Department of Social Services for the State of Colorado; and The Department of Social Services for the State of Colorado, Petitioners/Cross-Respondents,
v.
The BOARD OF COUNTY COMMISSIONERS FOR the COUNTY OF WELD, STATE OF COLORADO, Respondent, and
Gene Brantner, individually, Respondent/Cross-Petitioner.
No. 94SC140.
Supreme Court of Colorado, En Banc.
June 5, 1995.
Rehearing Denied June 26, 1995.
Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., Wade Livingston, First Asst. Atty. Gen., Human Resources Section, Denver, for petitioners/cross-respondents.
Bruce T. Barker, Weld County Atty., Cyndy Giauque, Asst. County Atty., Greeley, for respondent.
Leboeuf, Lamb, Greene & Macrae, L.L.P., Robert N. Miller, Patton Boggs, L.L.P., George R. Coe, Denver, for respondent/cross-petitioner.
Don K. DeFord, Garfield County Atty., Glenwood Springs, for amicus curiae Bd. of County of Com'rs of Garfield County, Colo.
Maurice Lyle Dechant, Mesa County Atty., Alan N. Hassler, Asst. Mesa County Atty., *780 Grand Junction, for amicus curiae Mesa County, Colo.
Justice ERICKSON delivered the Opinion of the Court.
We granted certiorari before judgment to review Board of County Commissioners v. Romer, No. 93CV3671 (Denver Dist.Ct. Jan. 13, 1994),[1] pursuant to C.A.R. 50.[2] The trial court entered summary judgment in favor of the Board of County Commissioners of Weld County (Board) holding that the Board's twenty percent payment is a "subsidy" within the meaning of article X, section 20(9) of the Colorado Constitution and that social services programs have been "delegated" to the counties within the meaning of section 20(9). The petitioners, Roy Romer in his official capacity as Governor of the State of Colorado, Karen Beye in her official capacity as the Executive Director of the Department of Social Services for the State of Colorado, and The Department of Social Services for the State of Colorado (collectively State), sought certiorari review pursuant to C.A.R. 50. We reverse and remand to the district court with directions to grant the State's cross-motion for summary judgment.

I
The Human Services Code[3] requires each county to have a department of social services (county department), consisting of a county board of social services, a county director, and other necessary employees. § 26-1-115(1), 11B C.R.S. (1994 Supp.). Each county department is "charged with the administration of public assistance and welfare and related activities in the respective counties in accordance with the rules and regulations of the state department." § 26-1-118(1), 11B C.R.S. (1994 Supp.).
The state department of social services (state department) is required to provide public assistance and welfare services to those who qualify. § 26-1-111(2), 11B C.R.S. (1989 & 1994 Supp.). The state department consists of a state board, an executive director, and other sections and units which are established by the executive director. § 26-1-105, 11B C.R.S. (1989 & 1994 Supp.). The executive director is responsible for establishing rules governing internal administration in the state department. § 26-1-108, 11B C.R.S. (1989 & 1994 Supp.). Rules and regulations issued by the state board and the executive director are binding upon the county departments. §§ 26-1-107(b)(10), -108(2), 11B C.R.S. (1994 Supp.).
The board of county commissioners in each county must appropriate funds to pay the county department's twenty percent share of the overall cost of providing social services. § 26-1-122(1)(a), 11B C.R.S. (1994 Supp.). Counties levy a property tax in an amount sufficient to raise funds to meet their twenty percent obligation. § 26-1-125, 11B C.R.S. (1989). If the amount raised is insufficient, the county must appropriate additional funds. § 26-1-122(1)(a), (c), 11B C.R.S. *781 (1994 Supp.). As long as the county department complies with the policies and rules of the state department, the state provides the remaining eighty percent of social services costs. § 26-1-122(3)(b), 11B C.R.S. (1994 Supp.).[4]
At the 1992 general election, the voters of the State of Colorado approved an amendment to the Colorado Constitution known as the Taxpayer's Bill of Rights (Amendment 1). Section 20(9) of Amendment 1 provides:
State Mandates. Except for public education through grade 12 or as required of a local district by federal law, a local district may reduce or end its subsidy to any program delegated to it by the general assembly for administration. For current programs, the state may require 90 days notice and that the adjustment occur in a maximum of three equal annual installments.
Colo. Const. art. X, § 20(9).
On November 16, 1992, pursuant to section 20(9), the Board notified the State of its decision to terminate and recover its twenty percent participation in social services programs.[5] In response, the State notified the Board that section 20(9) does not apply to social services programs. According to the State, the county's twenty percent share is not a "subsidy," and social services programs are not "delegated."
The Board filed an action for declaratory judgment seeking a determination of the correct application of section 20(9) to social services programs. The parties filed cross motions for summary judgment. The trial court granted the Board's motion and held that section 20(9) applied to social services programs. The trial court found "that Weld County properly and lawfully notified the state of its election to end these 20% payments; that such election was effective April 1, 1993; [and] that Weld County is accordingly entitled to a refund of the 20% payments made and to be made to the state from April 1993 through March 1996...."
The trial court also denied the parties' cross-requests for attorneys fees and costs. Gene Brantner, an individual Weld County taxpayer, filed a second motion for attorneys fees and costs. The second motion was denied, which gives rise to the issue on Brantner's cross-petition.

II
Section 20(9) of Amendment 1 allows a local district to "reduce or end its subsidy to any program delegated to it by the general assembly for administration." Colo. Const. art X, § 20(9) (emphasis added). "Subsidy" is not defined either in the constitutional provision or by the General Assembly. However, "subsidy" is given a broad definition in a lay dictionary as "[f]inancial assistance given by one person or government to another." American Heritage Dictionary 809 (3d ed. 1994). A legal dictionary defines "subsidy" as "[a] grant of money made by government in aid of the promoters of any enterprise, work, or improvement in which the government desires to participate, or which is considered a proper subject for government aid, because such purpose is likely to be of benefit to the public." Black's Law Dictionary 1280 (5th ed. 1979). Courts have used other definitions of "subsidy." See, e.g., State Tax Comm'n v. Miami Copper Co., 74 Ariz. 234, 239, 246 P.2d 871, 876 (1952) ("`[A] grant of funds or property from a government, to a private person or company to assist in the establishment or support of an enterprise deemed advantageous to the public.'") (quoting Webster's International Dictionary (2d ed.)); County of Los Angeles v. State Dep't of Pub. Health, 158 Cal.App.2d 425, 322 P.2d 968, 973 (1958) (A "`subsidy' is ... `a grant of funds or property from a government, as of the state or a municipal corporation, to a private person or company to assist in the establishment or support of an enterprise deemed advantageous to the public....'") (quoting 83 C.J.S. Subsidy 760 (1953)); Weaver v. Prince George's County, Md., 281 Md. 349, 379 A.2d 399, 408 (1977) ("The ordinary signification of the term `subsidy' is a grant of funds by a government or its *782 proper agencies to a private person or entity to assist in the establishment or support of an enterprise or activity deemed advantageous to the public."); Klies v. Linnane, 117 Mont. 59, 156 P.2d 183, 185 (1945) (A "`subsidy'... [is] `a grant of funds or property from a government, ... to a private person or company to assist in the establishment or support of an enterprise deemed advantageous to the public.'") (quoting Webster's New International Dictionary). The various definitions illustrate the ambiguity created by the word "subsidy" in section 20(9). The use of the word "subsidy" creates a difficult issue in resolving the limitations imposed by section 20(9). The determination of the application of section 20(9) centers on the state-county relationship.
A government cannot subsidize itself. "A county is not an independent governmental entity existing by reason of any inherent sovereign authority of its residents; rather, it is a political subdivision of the state, existing only for the convenient administration of the state government, created to carry out the will of the state." Board of County Comm'rs v. Love, 172 Colo. 121, 125, 470 P.2d 861, 862 (1970); see also Pennobscot, Inc. v. Board of County Comm'rs, 642 P.2d 915, 918 (Colo.1982) ("A county is a political subdivision of the state and, as such, possesses only those powers expressly granted by the constitution or delegated to it by statute."). As a political subdivision of the state, a county is part of the state government. When a county attempts to subsidize the state, the state, through a county, contributes to itself. The Board's subsidy argument is not a legal possibility. One division of government may not subsidize another division.

III
The Human Services Code specifically states that public assistance and social services activities are "state as well as county purposes." § 26-1-111(1), 11B C.R.S. (1994 Supp.). Counties "benefit when the indigent or disabled residents of their communities receive assistance for basic subsistence needs...." Colorado Dep't of Social Servs. v. Board of County Comm'rs, 697 P.2d 1, 13 (Colo.1985). The locally raised funds are disbursed throughout the county. Id. at 11. A county directly benefits from social services programs, and these activities serve the purposes of state and local government. Id. at 13. The individual benefits received by each county correspond to the different costs of providing social services programs. See id. at 10 n. 13. The different costs for social services in each county evidence the various and different needs of the districts and emphasize the local purposes served by the programs. By upholding different tax rates for each county to effect a fair share of the burden, the local character of social services was established.[6]See Colorado Dep't of Social Servs. v. Board of County Comm'rs, 697 P.2d 1, 23 (Colo.1985). We recognize that Colorado Department of Social Services was decided before the adoption of Amendment 1. However, Amendment 1 did not change the mixed state and local character of social services. To hold otherwise would require overruling Colorado Department of Social Services and subject the entire social services funding scheme to constitutional attack. We decline to do so.
Under our holding in Colorado Department of Social Services, the Colorado Constitution allows a county to tax for local purposes where the state may not, but the county's power to tax must be delegated to it expressly by the state. Therefore, because a county has no power to tax except as authorized by the state, a county is an agent of the *783 state and has no capacity to subsidize the state.
Because we hold that the county's social services payments do not constitute a subsidy within the meaning of section 20(9), we decline to address the other issues raised on certiorari. Accordingly, we reverse the trial court's summary judgment for the respondents and remand to the district court with directions to grant the petitioners' cross-motion for summary judgment.
ROVIRA, C.J., dissents, and LOHR, J., joins in the dissent.
VOLLACK and SCOTT, JJ., do not participate.
Chief Justice ROVIRA, dissenting:
The majority holds that Weld County's state-mandated payments of social service costs do not constitute a subsidy because the county has no capacity to subsidize the state. Maj. op. at 782-83. I disagree, and would affirm the trial court's finding that article X, section 20(9) of the Colorado Constitution applies to the county's share of social service costs and therefore the county may reduce or end its support of the social services program.

I
The Colorado Social Services Code, sections 26-1-101 to -128, 11B C.R.S. (1989), recently underwent significant restructuring and effective July 1, 1994, became the Colorado Human Services Code, sections 26-1-101 to -201, 11B C.R.S. (1994 Supp.). This reorganization resulted in a transfer of various duties and functions from the state department of social services to the newly established state department of human services (state department). § 26-1-105.5(1)(a), 11B C.R.S. (1994 Supp.). Although the majority discusses the structure of the county departments of social services (county departments), review of the state department completes the background from which to analyze the issues in this case. § 26-1-115, 11B C.R.S. (1994 Supp.).
Administration or supervision of all public assistance and welfare activities is vested in the state department. § 26-1-111(1), 11B C.R.S. (1994 Supp.). The state department is required to provide public assistance and welfare services to those who qualify. Additionally, it has responsibility for the administration or supervision of various other social service programs. § 26-1-111(2), 11B C.R.S. (1989 & 1994 Supp.). The state department is also required to organize and supervise county departments "for the effective administration of public assistance and welfare functions as set out in the rules of the executive director and the rules of the state board...." § 26-1-111(2)(d), 11B C.R.S. (1989 & 1994 Supp.).
The state department consists of a state board, an executive director, and other sections and units which are established by the executive director as deemed necessary. § 26-1-105, 11B C.R.S. (1989 & 1994 Supp.). State board responsibilities include, in part, fixing minimum standards and qualifications for employees of the county department and establishing salary schedules. § 26-1-108(2), 11B C.R.S. (1989) (currently set forth in § 26-1-107(b)(10), 11B C.R.S. (1994 Supp.)). The executive director is responsible for establishing rules governing internal administration in the state department, in addition to setting other rules which the state board is not otherwise authorized to adopt. § 26-1-108, 11B C.R.S. (1989 & 1994 Supp.). The rules established by the state department are binding upon the county departments. § 26-1-108(1)(a)-(b), 11B C.R.S. (1989) (currently §§ 26-1-107(b)(10) and -108(2), 11B C.R.S. (1994 Supp.)).
The county departments serve as agents of the state department and are charged with the administration of public assistance and welfare and related activities according to the rules of the state department. § 26-1-118, 11B C.R.S. (1994 Supp.). The county commissioners in each county are required to appropriate funds necessary to defray the county department's twenty percent share of the cost of providing social services, and shall include in the tax levy for such county the sums appropriated for that purpose. § 26-1-122(1)(a), 11B C.R.S. (1989 & 1994 Supp.). The state treasurer advances eighty percent of the costs of social service programs to the *784 county, provided that the county departments act in accordance with the policies and rules of the state department. § 26-1-122(3)(b), 11B C.R.S. (1989 & 1994 Supp.).

II
Article X, section 20(9) of Amendment 1 provides in pertinent part:

State Mandates. Except for public education through grade 12 or as required of a local district by federal law, a local district may reduce or end its subsidy to any program delegated to it by the general assembly for administration. For current programs, the state may require 90 days notice and that the adjustments occur in a maximum of three equal annual installments.
Colo. Const. art. X, § 20(9) (emphasis added). To determine whether Weld County may reduce or end the payments required of it by the General Assembly for social services, interpretation of three key wordslocal district, subsidy, and delegatedis essential. Although Amendment 1 provides many definitions, it is silent with regard to these words. See Colo. Const. art. X, § 20(2).
When construing a constitutional amendment and interpreting its language, we must ascertain and give effect to the intent of the electorate adopting the amendment. Urbish v. Lamm, 761 P.2d 756, 760 (Colo.1988). Words and phrases in the amendment must be given the natural and popular meaning usually understood by the people who adopted it. Id. We must avoid an interpretation which would lead to an "unjust, absurd or unreasonable result." Bickel v. City of Boulder, 885 P.2d 215, 229 (Colo.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1112, 130 L.Ed.2d 1076 (1995).
The foremost purpose of Amendment 1 is to restrict the expansion of government by limiting state and local spending, the imposition of new taxes, and any increase in taxes. Colo. Const. art. X. Thus, Amendment 1's preferred interpretation is that which "shall reasonably restrain most the growth of government." Colo. Const. art. X, § 20(1).

A.
Weld County must be a local district as contemplated by article X, section 20(9) in order to reduce or end its subsidy to a program delegated to it by the General Assembly for administration. Section 20(2)(b) states that a "`district' means the state or any local government, excluding enterprises." Colo. Const. art. X, § 20(2)(b). Therefore, a "local" district would be a local government entity as opposed to a state government entity. A county is a local government and thus, Weld County is a local district within the meaning of article X, section 20(9). By its silence on the subject, the majority opinion concedes that a county is a local district within the meaning of section 20(9).

B
A county's twenty percent share of social services costs must be a "subsidy" before the county may reduce or end its mandated contribution to the program. The majority recognizes that a subsidy has been defined as "[f]inancial assistance given by one person or government to another." Maj. op. at 781 (quoting American Heritage Dictionary 809 (3d ed. 1994)). Black's Law Dictionary defines a subsidy as "[a] grant of money made by government in aid of the promoters of any enterprise, work, or improvement in which the government desires to participate, or which is considered a proper subject for government aid, because such purpose is likely to be of benefit to the public." Maj. op. at 781 (quoting Black's Law Dictionary 1280 (5th ed. 1979)).
Not being satisfied with the dictionary meaning of "subsidy," the majority reviewed case law from other jurisdictions for their definition and then concluded that the word "subsidy" in the context of section 20(9) is ambiguous. Maj. op. at 782. The majority has, however, overlooked the fact that the General Assembly has provided guidance for the interpretation of section 20(9).[1] Section *785 20(9) is entitled "State Mandates." A title aids the construction of a constitutional or statutory section by providing its purpose and the controlling intent of those who enacted it. Cf. People v. Friederich, 67 Colo. 69, 71, 185 P. 657, 658 (1919) (the purpose of a statute is ascertained and determined by its title and the title is presumed to contain the controlling and conclusive index of legislative intent).
A program must be a state mandate before a county may reduce or end its subsidy. A state mandate, as defined by the General Assembly, means "any legal requirement established by statutory provision or administrative rule or regulation which requires any local government to undertake a specific activity or to provide a specific service which satisfies minimum state standards...." § 29-1-304.5(3)(d), 12A C.R.S. (1994 Supp.). The social service program is a state mandate. The county departments are charged with the administration of public assistance and welfare and related activities. § 26-1-118, 11B C.R.S. (1994 Supp.). The county departments must abide by the rules and regulations set forth by the state department and the county commissioners are required to levy taxes and appropriate funds sufficient to meet the twenty percent obligation of social service costs as required by statute. §§ 26-1-122(1)(a), (3)(b), 11B C.R.S. (1989 & 1994 Supp.).
Any interpretation of section 20(9) must be within the context of a state mandate as defined by the General Assembly. This context leads to the conclusion that a subsidy is financial assistance or payment by a local government (county), for a state mandated program (social services) delegated to the local government (county) by the General Assembly for administration. This interpretation defines subsidy in its most logical and common sense terms resulting in a coherent and unambiguous construction.
The General Assembly's enactment of section 26-1-122.5, 11B C.R.S. (1994 Supp.) supports this conclusion. In direct response to the adoption of section 20(9) of Amendment 1 in 1992, it enacted section 26-1-122.5 in 1993, to limit increases in county appropriations.[2] It recognized the right of a county to reduce or end its share of social service costs.
The limitations set forth in this section on the increase in the county share of administrative costs and program costs ... will result in increased costs to the state. By making state funds available, the state is encouraging counties not to exercise any right a county may have pursuant to section 20(9) of article X of the Colorado constitution to reduce or end its share of the costs ... for the county for three fiscal years following the fiscal year in which the state funds are received.
§ 26-1-122.5(6) (emphasis added). The statute continues:
If a county accepts funds from the state based on the limitations provided in this section for any fiscal year, the county agrees not to exercise any rights the county may have to reduce or end its share of costs of public assistance, medical assistance, and food stamps for the fiscal year in which the funds are accepted. Nothing in this subsection (6) or any agreement pursuant to this subsection (6) shall be construed to affect the existence or status of any rights accruing to the state or any county pursuant to section 20(9) of article X of the Colorado constitution.
Id. This statute supports the conclusion that the General Assembly considered the county's obligation for social services to be a subsidy within the meaning of section 20(9) and that a county may reduce or end its share of social services cost under section 20(9). Instead of using the word subsidy, the General Assembly substituted the phrase "share of costs." A "share of costs" and a payment are equivalent.
*786 The majority, when faced with the dictionary meaning of subsidy and the acts of the General Assembly in response to the passage of Amendment 1, focuses on the county and state relationship. Maj. op. at 781-82. It concludes that a government cannot subsidize (pay) itself. Id. "When a county attempts to subsidize [pay] the state, the state, through a county, contributes to itself."[3]Id. at 782.
This analysis disregards the mechanics of the social service system. The county collects taxes to defray its twenty percent share of the cost of providing social service programs imposed upon it by the state. § 26-1-122(1)(a), 11B C.R.S. (1994 Supp.). Provided the county follows the rules and regulations of the state department, the state treasurer pays eighty percent of the cost of such programs. § 26-1-122(3)(b). The actual payment of monies by the county is not made to the state. Rather, the county distributes the funds received from the state and the taxes collected by the county to the recipients of the social service programs. The county is not subsidizing the state by making payments to the state. It pays the funds to social service recipients, thereby subsidizing or paying for the state program delegated to it by the General Assembly.
The majority implies there must be an inherent revenue raising authority before a subsidy exists. Maj. op. at 782-83. It concludes that a county has no capacity to subsidize the state government because it has no independent taxing ability. Id. at 783. I disagree with this analysis. We must interpret the word "subsidy" to carry out the intent of the electorate and not to defeat it. Eugene Cervi & Co. v. Russell, 31 Colo.App. 525, 506 P.2d 748 (1972), aff'd, 184 Colo. 282, 519 P.2d 1189 (1974). The majority's interpretation renders section 20(9) meaningless.
As discussed above, a local district is a local form of government. See supra part II.B. The majority's holding not only removes the ability of any county to utilize Section 20(9), it equally removes this ability from statutory cities and towns and home rule cities.
Statutory cities and towns derive their sole powers from constitutional authority which must be defined by general law and no powers may be exercised except those expressly conferred. City of Aurora v. Bogue, 176 Colo. 198, 200, 489 P.2d 1295, 1296 (1971). Municipalities, like counties, exist for the convenient administration of government and are instruments of the state created to carry out the will of the state. Board of County Comm'rs v. City & County of Denver, 150 Colo. 198, 205, 372 P.2d 152, 156 (1962). A statutory city, as an agent of the state has its ability to tax delegated to it expressly by the state. See Colo. Const. art. X, § 7 ("The general assembly shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may by law vest in the corporate authorities ... the power to assess and collect taxes for all purposes of such corporation."). Under the majority's analysis, a statutory city does not have the capacity to subsidize a state program because it has no independent ability to tax.
Article XX of the Colorado Constitution gives home rule cities broader powers than those usually given by the General Assembly to statutory cities. Lehman v. City & County of Denver, 144 Colo. 109, 111, 355 P.2d 309, 310 (1960). The power to tax those who live within the home rule city for local purposes stems from the Colorado Constitution. Berman v. City & County of Denver, 156 Colo. 538, 542-43, 400 P.2d 434, 439 (1965). However, a home rule city is amenable to state control in all matters of a general, as distinguished from local, character. See Spears Free Clinic & Hosp. for Poor Children v. State Bd. of Health, 122 Colo. 147, 149, 220 P.2d 872, 874 (1950). Under the majority's rationale a home rule city would not have the capacity to subsidize a state program because its ability to tax for an *787 issue of both local and state concern is delegated to it by the state.
The electorate by adopting section 20(9) intended that it have some applicability. If the home rule cities, statutory cities, and counties are unable to reduce or end subsidies (payments) to state mandated programs, then section 20(9) is substantively meaningless. The majority's interpretation eliminates the ability of all forms of local government which are local districts to exercise any rights pursuant to section 20(9).
Social services is a state mandate. Counties support the state mandated program by paying county funds to social service recipients. The responsibility to provide social service programs rests with the state. The cost for such programs would also rest with the state in its entirety were it not for the legislature's decision to require counties to impose taxes and appropriate money to support such programs.

C
Because I would find Weld County's twenty percent share for the cost of social service programs is a subsidy, the meaning of the term "delegated" must be ascertained to determine whether the administration of social service programs has been delegated to the counties by the State.
When used as a verb, "delegate" typically means "to transfer authority from one person to another; to empower one to perform a task in behalf of another." Black's Law Dictionary 426 (6th ed. 1990). Likewise, "delegation" is defined as "the intrusting [of] another with a general power to act for the good of those who depute him.... The transfer of authority by one person to another." Id.
The State argues that social service programs are, and have always been, a county responsibility and therefore it cannot delegate to a county a power it does not hold. The state relies upon Colorado Department of Social Services v. Board of County Commissioners, 697 P.2d 1 (Colo 1985) (Colorado Department of Social Services), to contend that it did not delegate responsibility to a county but has recently joined the county to assist in providing these services.
In Colorado Department of Social Services, this court addressed the issue of whether the statutory funding provisions, requiring a county's twenty percent contribution for social services, were constitutional given the fact that all counties levied different taxes. Notwithstanding our holding of the overall validity of the statutory funding scheme, the issue before the court today is whether Amendment 1 allows a county to reduce or end its funding requirement. Colorado Department of Social Services was decided in 1985, several years prior to the passage of Amendment 1 and thus does not control the issue.
Furthermore, even prior to statehood, the responsibility for social services rested with the territorial government and later the state government, not the counties. Id. at 5. In the past, the counties were simply following legislative mandates with regard to their involvement in social service programs. Id. The State did not recently join the counties in providing social services but has always had the responsibility for these programs. Even assuming arguendo that the county was traditionally responsible for social services, in 1981, the General Assembly deleted all language requiring county responsibility for public assistance programs, except for the obligation to provide burial services for indigent persons. Id. (citing §§ 30-17-102 and -104, 12 C.R.S. (1984 Supp.)).
This conclusion is consistent with the recent adoption of section 29-1-304.8, 12A C.R.S. (1994 Supp.), which identifies certain programs not delegated within the meaning of Amendment 1. The classified "non-delegated" programs arise from the inherent duties of a county officer whose office has been constitutionally created or they are programs which are constitutionally required. Id. In contrast, administration of social service programs is statutorily required of the county department and its employees. § 26-1-115, 11B C.R.S. (1989 & 1994 Supp.).
A county possess only those powers expressly "granted by the constitution or delegated to it by statute." Pennobscot, Inc. v. Board of County Comm'rs, 642 P.2d 915, 918 (Colo.1982). "[A] delegation of power carries with it a conferral of all implied powers *788 reasonably necessary to the proper exercise of the expressly delegated power." County departments are given the express power and the necessary implied powers to administer social service programs by the General Assembly. It is clear that the legislature has in fact delegated administration of social service programs to the county departments pursuant to section 26-1-118(1), 11B C.R.S. (1989 & 1994 Supp.).

III
In conclusion, I find that article X, section 20(9) was written and understood by the people to allow a local district, the county in this instance, to end state prescribed financial responsibility for programs delegated to it by the General Assembly for administration. Social service programs are programs that are delegated and which the counties are required to pay for, in other words, to subsidize. These programs meet the criteria of section 20(9) and are encompassed by its intended purpose of allowing counties to turn back such programs to the state. Therefore, I respectfully dissent.
I am authorized to say that Justice LOHR joins in this dissent.
NOTES
[1] Certiorari was granted to review three issues. The first and second issues were raised by the petitioners. The third issue was raised by the respondents and cross-petitioners, the Board of County Commissioners and Gene Brantner.

1. Whether the county's twenty percent share of the cost of some social services programs is a subsidy within the meaning of article X, section 20(9), of the Colorado Constitution.
2. Whether the general assembly has delegated social services to the county within the meaning of article X, section 20(9), of the Colorado Constitution.
3. Whether the provision allowing successful plaintiffs to recover their attorney fees is mandatory or permissive upon the trial court, and if permissive what standards should the district court have applied in evaluating plaintiffs' motion.
[2] C.A.R. 50(a) provides:

A writ of certiorari from the Supreme Court to review a case newly filed or pending in the court of appeals, before judgment is given in said court, may be granted upon a showing:
(1) That the case involves a matter of substance not heretofore determined by the Supreme Court of Colorado, or that the case if decided according to the relief sought on appeal involves the overruling of a previous decision of the Supreme Court; or
(2) That the Court of Appeals is being asked to decide an important state question which has not been, but should be, determined by the Supreme Court; or
(3) That the case is of such imperative public importance as to justify the deviation from normal appellate processes and to require immediate determination in the Supreme Court.
[3] §§ 26-1-101 to XX-XX-XXX, 11B C.R.S. (1989 & 1994 Supp.).
[4] This percentage ratio is subject to a number of exceptions and limitations. See, e.g., §§ 26-1-122(4)(e), -126, 11B C.R.S. (1989 & 1994 Supp.).
[5] The Board confirmed its position on January 4, 1993.
[6] If the provision of social services were of exclusive statewide concern, the ability of a county to end its financial contribution to the state social services program under Amendment 1 would conflict with the prohibition of the release or discharge of counties from their "proportionate share of taxes to be levied for state purposes" under article X, section 7. Colo. Const. art. X, § 7. See, Submission of Interrogatories on Senate Bill 93-74, 852 P.2d 1, 8 (Colo.1993) ("The test for the existence of a conflict is: Does one authorize what the other forbids or forbid what the other authorizes?") (citation omitted). An "interpretation which harmonizes different constitutional provisions is favored over one that would create a conflict between them." Colorado Common Cause v. Bledsoe, 810 P.2d 201, 207 (Colo. 1991). Recognizing the mixed state and local interest in the provision of social services is consistent with our prior decisions and avoids direct conflict between Amendment 1 and section 7.
[1] Section 24-77-101, 10B C.R.S. (1994 Supp.) provides "[i]t is within the legislative prerogative of the general assembly to enact legislation which will facilitate the operation of section 20 of article X."
[2] Beginning in calendar fiscal year 1994:

[t]he board of county commissioners in each county of this state shall annually appropriate funds for the county share of administrative costs and program costs of public assistance, medical assistance, and food stamps in the county in an amount equal to the actual county share for the previous fiscal year adjusted by an amount equal to the actual county share for the previous fiscal year multiplied by the percentage of change in property tax revenue.
§ 26-1-122.5(1).
[3] The majority depicts the county and the state as the same entity. Although the county is a political subdivision of the state, it cannot be characterized as a division of the state in the same manner as is an administrative department of the state government, as the two have separate and distinct functions. National Advertising Co. v. Department of Highways, 718 P.2d 1038, 1043-44 (Colo.1986).