No. 21401.

NORMAN E. BERMAN, IN BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED, *v.* CITY AND COUNTY OF DENVER, ET AL.

(400 P.2d 434)

Decided March 29, 1965.

Norman E. Berman, pro se, M. O. Edison, Jorge E. Castillo, for plaintiff in error.

Max P. Zall, City Attorney, W. Keith Peterson, Assistant, Earl T. Thrasher, Assistant, Thomas A. Gilliam, Assistant, for defendants in error.

J. Kinney O'Rourke, Gordon D. Hinds, Joseph W. Esch, Alan L. Sternberg, A. M. Emigh, William O. De-Souchet, Jr., Charles Alexander, L. M. Coulter, Neil

C. KING, GERALD J. ASHBY, JOHN E. KREIDLER, FREDERICK
T. HENRY, Amici Curiae.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error was plaintiff in the trial court and
defendants in error were defendants. We will refer to
the parties as they appeared in the district court. The
City and County of Denver will be referred to as the
City.

At issue in this case is (1) the validity of the sales
and use taxes imposed by ordinance of the defendant
City; and (2) the legality of the bond issue submitted
to the voters under the terms of Ordinance No. 130, se-
ries of 1964, Revised Municipal Code of the City of
Denver.

The plaintiff in his complaint sought to recover $64.86
paid by him, under protest, as a "use tax" on an automo-
bile purchased by him in Englewood, Colorado. The ar-
gument advanced in support of this portion of his com-
plaint is that the City and County of Denver lacks the
power to enact sales and use taxes for the reason that
these taxes do not involve matters of purely local con-
cern; and furthermore, that the State of Colorado has
not given its consent to the enactment of such taxes by
the City, but on the contrary has fully pre-empted the
field to the exclusion of the City.

With reference to the bond issue, the thrust of plain-
tiff's case is that the defendant City failed, by the ordi-
nance, to levy a tax on property to pay the bonded in-
debtedness; and that there was an additional failure to
comply with Article XI, Section 8, of the Constitution of
Colorado in that under the ordinance the bonds would
mature thirty years from date of issue in violation of
the constitutional limit of fifteen years.

The parties stipulated that plaintiff is a resident and

taxpaying elector of the City; that the City was a home rule municipal corporation; that plaintiff paid a use tax to the City and County of Denver under protest in the amount of $64.86 on his purchase in Englewood, Colorado, of a 1964 Ford automobile which was delivered to his home in Denver. The parties further stipulated that the certified copy of the Sales and Use Tax Ordinance was Exhibit 1 of the complaint, and that Ordinance No. 130 attached to the complaint was a correct copy. They agreed that the assessed valuation of property in the City, the existing bonded indebtedness, and the legal debt limit for the years 1962 and 1963 were correctly stated.

The trial court by written "Findings and Judgment" upheld the City's power to impose the sales and use taxes. It further decreed that the issues raised concerning the bond issue were premature except as to the legality of the submission to the voters, which the court approved and found legal. The court entered judgment in favor of the defendants.

█ █ We first consider the issues raised with relation to the sales and use tax adopted by the City.

Questions to be Determined.

First: *Do home rule cities have the power to adopt a sales and use tax under the grant of authority given to them by the people, as contained in Article XX of the Constitution of the State of Colorado?*

This question must be answered in the affirmative. The right to levy a tax to raise revenue with which to conduct the affairs and business of the City is clearly within the constitutional grant of power to home rule cities, contained in Article XX, Sec. 6 of the Constitution of Colorado. There we find that home rule cities:

"* * * are hereby vested with, and they shall always have, power to make, amend, add to or replace the charter of said city or town, which shall be its. organic law and extend to all its local and municipal matters.

"Such charter and the ordinances made pursuant

thereto in such matters shall supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith.

\*   \*   \*

"It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters and the enumeration herein of certain powers shall not be construed to deny such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right."

██ The provisions of the sales and use tax ordinances adopted by the City relate to matters of "local or municipal" concern within the meaning of Article XX, Sec. 6. They were adopted to raise revenue with which to conduct the affairs and render the services performed by the City. These ordinances cover sales within the City, or sales outside the City where delivery is made in the City of goods or commodities to be used therein.

██ The arguments of plaintiff relating to the fact that visitors or transients are unjustly required to pay the tax carries no substance and is not persuasive. These visitors are within the City when purchases are made by them and are subject to all the valid ordinances of the City governing their conduct and fixing their responsibilities. All the facilities and services of the City which are available to permanent residents are equally available to the visitors, and they cannot complain that they are required to contribute to the cost of supplying those facilities and services. Whether the money to be derived from an ordinance which levies a tax is used to provide revenue for the maintenance of local government is one of the tests to be applied in determining whether the ordinance relates to a matter of "local or municipal" concern. On this point it is sufficient to make reference to

the following language found in *Four-County Metropolitan Capital Improvement District, et al., v. The Board of County Commissioners of Adams County, et al.,* 149 Colo. 284, 369 P.2d 67:

"In numerous opinions handed down by this court extending over a period of fifty years, it has been made perfectly clear that when the people adopted Article XX they conferred *every power* theretofore possessed by the legislature to authorize municipalities to function in local and municipal affairs. * * *"

■ The plaintiff cites a number of cases which involve an exercise of the police power of cities. These cases are neither imperative nor persuasive in this controversy. The power to levy a tax in home rule cities, to be paid by those who live or sojourn there, for the purpose of defraying expenses of local and municipal government, stems from a grant by the people in the form of a constitutional provision. Such authority is not based upon the police power, and cases dealing with that subject are not necessarily applicable, although each might involve a determination of the question as to whether the subject matter relates to a "local or municipal" activity.

Second: *By the adoption of the old age pension amendment, Article XXIV, and the legislative enactment of a sales and use tax by the General Assembly, has the state pre-empted the field and taken the power to enact sales and use taxes beyond the reach of the City?*

■ This question is answered in the negative. Two cases decided by this court conclusively establish that Article XXIV has no application to the proceeds of the Denver sales and use tax, and that state taxation in the same field as that of a municipality can co-exist. *State v. Denver,* 106 Colo. 519, 107 P.2d 317; *Post v. Grand Junction,* 118 Colo. 434, 195 P.2d 958. Article XXIV of the state constitution, and the state sales and use tax statutes, deal exclusively with state levies and have no

application to taxes levied by home rule cities, which are purely local and municipal.

Third: *Does the admitted fact that, under the collection procedures adopted by the City, the plaintiff was required to pay the use tax before he could receive his automobile license plates, invalidate the ordinance?*

This question is answered in the negative. It is not seriously contended that the City could lawfully demand payment of an unrelated tax demand as a condition upon which it would issue license plates to a car owner. Assuming that such a collection device is illegal it would not destroy the whole ordinance. Anything in the ordinance purporting to authorize such a practice is clearly severable. The plaintiff paid the tax under protest and received his license for his automobile. He selected this course rather than to refuse to pay and bring an action in mandamus to require issuance of the license without payment of the tax. Having failed to establish the invalidity of the use tax he has suffered no injury.

Fourth: *Does the fact that the use tax ordinance, under certain circumstances, purports to require nonresident vendors to secure a city vendors license, place the plaintiff in a position to challenge the validity of the ordinance upon that ground?*

This question is answered in the negative. It is generally accepted law that no person is entitled to assail the constitutionality of an ordinance or statute except as he himself is adversely affected by it. *Rinn v. Bedford,* 102 Colo. 475, 84 P.2d 827. The plaintiff is not a vendor of automobiles, who resides outside the city, and is not adversely affected by the provisions of the ordinance purporting to require such vendor to secure a license. Accordingly, it is our view that plaintiff has no standing in this matter on this account.

We now give attention to the arguments relating to the proposed bond issue. Ordinance No. 130, Series of 1964, fixes the details of the bond issue and provides for a bond election. It provides that no bonds shall

546

be delivered after June 30, 1976, (12 years after the date of the bond election) and that the bonds will mature serially over a period of not to exceed thirty years. It does not provide for the levy of any specific ad valorem tax but contains a policy statement that the bonds in question shall not "* * * be issued unless the maturing principal and accruing interest on said bonds may be met from revenues other than general ad valorem property taxes, including, without limitation, any sales, use or income tax, * * *."

The ordinance submitted to the voters of the City and County of Denver a question which included the following, with reference to ten separate proposals relating to different projects:

"Shall the Council of the City and County of Denver, by virtue of the authority vested in it by the Constitution of the State of Colorado and the Charter of the City and County of Denver, authorize the issuance of the general obligation bonds of the City and County of Denver in the principal amount of $............., or so much thereof as may be necessary, *to be payable from general ad valorem taxes which may be levied without limitation of rate or amount on all the taxable property within the City and County of Denver* * * *." (Here follows a description of the particular project.) (Emphasis supplied.)

Article XI, Section 8 of the Colorado Constitution provides in part as follows:

"No city or town shall contract any debt by loan in any form, except by means of an ordinance, which shall be irrepealable, until the indebtedness therein provided for shall have been fully paid or discharged, specifying the purposes to which the funds to be raised shall be applied, and, *providing for the levy of a tax, not exceeding twelve (12) mills on each dollar of valuation of taxable property within such city or town sufficient to pay the annual interest and extinguish the principal of such debt within fifteen, but not less than ten years from the creation thereof* * * *." (Emphasis supplied.)

Upon this admitted state of the record the plaintiff argues:

"Thus the grant of power requested of the qualified electors of the city was considerably broader than that permitted by the constitutional article. The voters were asked to authorize the City Council to allow the future levy of a property tax 'without limitation of rate or amount' while the Constitution prohibits a tax in excess of twelve mills on each dollar of valuation of taxable property."

It is further argued that:

"* * * Section 8, Article XI of the Constitution, specifically calls for a levy sufficient to pay the annual interest and extinguish the principal of the debt within 15 but no less than 10 years. The bond issue in question thus exceeds the constitutional limit by 15 years."

Question to be Determined.

*Are the limitations on the power of cities and towns to borrow money, as set forth in Article XI, Section 8, of the Constitution of Colorado, binding upon home rule cities operating under charters authorized by Article XX of the Constitution?*

The question is answered in the negative. We hold that a home rule city which undertakes to finance a program of capital improvements (a matter of local and municipal concern) is not limited in its power to do so by Article XI, Section 8, of the Colorado Constitution. Article XX and the amendment thereto which is Section 6 thereof, and the charter of the home rule city (all of which were enacted and came into being subsequent to the adoption of Article XI) confer the power and fix the conditions upon which a home rule city may borrow money. Article XX, Section 8, expressly provides that:

"Anything in the constitution of this state in conflict or inconsistent with the provisions of this amendment is hereby declared to be inapplicable to the matters and things by this amendment covered and provided for."

Article XX, Section 1, confers broad powers upon the

home rule City and County of Denver and concludes with the significant language that the City, "* * * shall have the power to issue bonds upon the vote of the tax-paying electors, at any special or general election, in any amount necessary to carry out any of said powers or purposes, *as may by the charter be provided.*" (Emphasis supplied.)

Thus the power to issue bonds in the instant case is effectively removed from the limitations contained in Article XI, Section 8. The charter of the City controls.

The procedures followed by the City in the premises involved were in compliance with the limitations fixed by the charter. *McNichols v. City and County of Denver,* 101 Colo. 316, 74 P.2d 99; *Montrose v. Niles,* 124 Colo. 535, 238 P.2d 875; *Clough v. City of Colorado Springs,* 70 Colo. 87, 197 Pac. 896; *Englewood v. Save the Parks Association,* 155 Colo. 548, 395 P.2d 999.

With respect to the bond issue, the judgment of the trial court amounted to a dismissal of plaintiff's claim. The reason assigned by the trial court was that the claim was prematurely brought. We think that there were issues framed which were ripe for determination. In the interest of the public we have determined those issues upon their merits as counsel for both sides have urged us to do. We reach the conclusion that the multiple claims of the plaintiff are without merit.

The judgment of dismissal entered by the trial court is affirmed.

MR. CHIEF JUSTICE PRINGLE not participating.