2012 COA 160

KYLE W. LARSON ENTERPRISES, INC., Roofing Experts, d/b/a The Roofing Experts, Plaintiff–Appellant,

v.

ALLSTATE INSURANCE COMPANY, Defendant–Appellee.

No. 11CA2205.

Colorado Court of Appeals, Div. VII.

Sept. 27, 2012.

As Modified on Denial of Rehearing Nov. 8, 2012.

The Frankl Law Firm, PC, Keith Frankl, Denver, Colorado, for Plaintiff–Appellant.

Harris, Karstaedt, Jamison & Powers, P.C., Robert W. Harris, Arthur R. Karstaedt

III, A. Peter Gregory, Englewood, Colorado, for Defendant–Appellee.

Opinion by Judge TERRY.

¶ 1 As an issue of first impression, we conclude that a repair vendor that brought a claim against an insurer on behalf of its insured is a "first-party claimant" under section 10–3–1115, C.R.S.2012, and is entitled to sue the insurer under section 10–3–1116, C.R.S.2012.

¶ 2 Plaintiff, Kyle W. Larson Enterprises, Inc., doing business as The Roofing Experts (Roofer), appeals only a portion of the trial court's summary judgment in favor of defendant, Allstate Insurance Company (Allstate). Because Roofer does not appeal the trial court's judgment for Allstate on Roofer's claims for breach of contract, account stated, and unjust enrichment, we express no opinion on that part of the judgment. We reverse the court's judgment against Roofer on its claim under section 10–3–1116 and remand for further proceedings on that claim.

## I. Background

¶ 3 Roofer contracted with the owners of four homes insured by Allstate to repair their roofs. The contracts provided that the repair costs would be paid from insurance proceeds and granted Roofer full authority to communicate with Allstate regarding all aspects of the insurance claims. Roofer met with Allstate adjustors to discuss the four homes and to determine the amount of each claim. Roofer began each repair after receiving approval from Allstate for the claims. It was later determined that additional repairs were necessary to comply with applicable building codes and to maintain certain manufacturers' warranties. Roofer made the repairs and invoiced Allstate for them. Allstate paid the claim amounts that were agreed to during the original adjustment, but refused to pay for the additional repairs.

¶ 4 Pursuant to sections 10–3–1115 and 10–3–1116, Roofer filed suit as a first-party claimant against Allstate for unreasonable delay and denial of benefits. The trial court ruled that Roofer was not a first-party claimant entitled to seek relief under the statutes and granted Allstate's summary judgment motion.

¶ 5 Roofer moved for reconsideration, arguing that the trial court erred in interpreting the legislative history of section 10–3–1115. That motion was denied.

¶ 6 Roofer now appeals the portion of the summary judgment dismissing its cause of action under section 10–3–1116, as well as the denial of its motion for reconsideration.

## II. Discussion

¶ 7 Roofer contends that the trial court erred in granting summary judgment for Allstate because section 10–3–1115 is unambiguous, and, under the plain language of the statute, Roofer qualifies as a first-party claimant. We agree.

### A. Standards of Review

¶ 8 Review of a trial court's grant of summary judgment is de novo. *In re Tonko*, 154 P.3d 397, 402 (Colo.2007). Summary judgment is appropriate only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.; Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1218 (Colo.2002). The nonmoving party is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts, and all doubts are resolved against the moving party. *A.C. Excavating v. Yacht Club II Homeowners Ass'n*, 114 P.3d 862, 865 (Colo.2005).

¶ 9 Statutory interpretation is a question of law subject to de novo review. *Sperry v. Field*, 205 P.3d 365, 367 (Colo. 2009); *Colo. State Bd. of Pharmacy v. Priem*, 272 P.3d 1136, 1139 (Colo.App.2012). "We read words and phrases in context and construe them literally according to common usage unless they have acquired a technical meaning by legislative definition." *People v. Yascavage*, 101 P.3d 1090, 1093 (Colo.2004). When interpreting a statute, we must read and consider the statute as a whole and interpret it in a manner giving "consistent, harmonious, and sensible effect to all its parts." *Lujan v. Life Care Centers*, 222 P.3d 970, 973 (Colo.App.2009). Conversely, we "should not interpret the statute so as to

render any part of it either meaningless or absurd." *Id.*

¶ 10 If the statutory language is clear and unambiguous, we need not look beyond its plain terms and must apply the statute as written. *Vigil v. Franklin*, 103 P.3d 322, 328 (Colo.2004). We do not resort to extrinsic modes of statutory construction unless the statutory language is ambiguous. *Colo. Ethics Watch v. City & County of Broomfield*, 203 P.3d 623, 625 (Colo.App. 2009). Nonetheless, we may consider legislative history when there is substantial legislative discussion surrounding the passage of a statute, and the plain language interpretation of a statute is consistent with legislative intent. *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 969 (Colo.App.2011).

¶ 11 A statute is ambiguous only if it is fairly susceptible of more than one interpretation. *See Support, Inc. v. Industrial Claim Appeals Office*, 968 P.2d 174, 175 (Colo.App.1998). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *People v. Nance*, 221 P.3d 428, 430 (Colo.App.2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).

### B. Section 10–3–1115

¶ 12 We conclude that, given the facts of this case, the "first-party claimant" definition in section 10–3–1115(1)(b), C.R.S 2012, unambiguously includes Roofer.

### 1. Under the Plain Meaning of Section 10–3–1115(1), Roofer is a "First-Party Claimant"

¶ 13 Section 10–3–1115 addresses the "[i]mproper denial of claims." We are concerned here with the following provisions of that statute:

(1)(a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed *to or on behalf of* any first-party claimant.

(b) For purposes of this section and section 10–3–1116:

(I) *"First-party claimant" means an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy.* "First-party claimant" includes a public entity that has paid a claim for benefits due to an insurer's unreasonable delay or denial of the claim.

(II) "First-party claimant" does not include:

(A) A nonparticipating provider performing services; or

(B) A person asserting a claim against an insured under a liability policy.

§ 10–3–1115(1)(a)–(b), C.R.S.2012 (emphasis added).

¶ 14 Our task is to give effect to the intent of the General Assembly, looking first at the language of the statute. *Colo. Office of Consumer Counsel v. Pub. Utils. Comm'n*, 42 P.3d 23, 27 (Colo.2002); *People v. McCullough*, 6 P.3d 774, 778 (Colo.2000). The General Assembly's intent in passing sections 10–3–1115 and 10–3–1116 was to create a statutory duty for insurers to refrain from unreasonable delay or denial of payment of any claim for benefits owed. *See* § 10–3–1115(1)(a). That duty would be breached if the insurer had no reasonable basis to delay or deny the claim. *See* § 10–3–1115(2), C.R.S.2012 (defining unreasonable delay or denial); *Kisselman*, 292 P.3d at 972–74. The legislature also intended to create an express private right of action by first-party claimants for violation of these statutes. *See* § 10–3–1116(1), C.R.S.2012 ("A first-party claimant as defined in section 10–3–1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court...."); *Kisselman*, 292 P.3d at 972; *see also* § 10–3–1115(2).

¶ 15 Consistent with that intent, we construe section 10–3–1115(1)(b) to include vendors such as Roofer who are authorized to assert, and do assert, claims on behalf of insureds.

¶ 16 We begin our analysis with the first clause of section 10–3–1115(1)(b)(I). By

listing broad categories of persons and entities that may "assert[ ] an entitlement to benefits," the legislature made it clear that persons and entities other than the insured are included as potential "first-party claimants."

¶ 17 As stated in the next clause of that subsection, a qualifying person or entity must "assert[ ] an entitlement to benefits owed directly to *or* on behalf of an insured under an insurance policy." § 10–3–1115(1)(b)(I) (emphasis added). The disjunctive "or" further indicates that the party asserting a claim for policy benefits may be a party other than the insured, so long as that party does so "on behalf of an insured."

¶ 18 Because "on behalf of" is not specifically defined in the statute, we read it according to its common usage. *Yascavage,* 101 P.3d at 1093. The phrase "on behalf of" means "in the interest of; as the representative of; for the benefit of." *Webster's Third New International Dictionary* 198 (2002).

¶ 19 Here, Allstate's insureds gave Roofer authority to communicate directly with Allstate regarding their claims based on repair work done by Roofer on the insureds' property. Roofer's assertion of claims against Allstate for payment for such repair work was necessarily made "on behalf of" the insureds, as this arrangement relieved the insureds of any obligation to assert the claims themselves. Roofer thus meets the statutory criteria for a "first-party claimant."

¶ 20 The legislative declaration contained at section 10–3–1101, C.R.S.2012, reinforces our interpretation. It states in relevant part:

> The purpose of this part 11 is to regulate trade practices in the business of insurance by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices, and by prohibiting the trade practices so defined or determined.

The aim of this legislation is to prevent unfair and deceptive practices by insurance companies. While we express no opinion on the merits of Roofer's claims, it is in keeping with the legislative objective to allow Roofer, as a repair vendor acting on behalf of the insured homeowners, to assert a claim for relief under this statute.

### 2. Rejection of Allstate's Alternative Interpretations

¶ 21 Allstate posits, noncommittally, that section 10–3–1115 "may be ambiguous." While its argument is somewhat difficult to parse, Allstate appears to contend that, aside from insureds, there are only three other categories of claimants that can qualify as "first-party claimants" under the statute: those entities that have a contractual relationship with the insurer; those entities that have a subrogation right; and public entities that have paid bills otherwise owed by insurers.

¶ 22 We first address Allstate's argument that various terms, phrases, and exclusions within section 10–3–1115 establish an implied requirement that there be a "contractual relationship" between the insurer and the claimant.

¶ 23 Allstate directs us to the following phrase in subsection (1)(b)(I): " 'First-party claimant' means an individual . . . or other legal entity asserting an entitlement to benefits *owed directly to or on behalf* of an insured . . . ." (emphasis added).

¶ 24 Allstate reads the word "directly" in the phrase "directly to or on behalf of" as modifying both of the phrases separated by "or." According to Allstate, to be a first-party claimant, a claimant must assert a claim that is payable "directly to the insured" or a claim that is payable "directly on behalf of" an insured. Allstate further interprets the only types of claimants authorized to assert a claim "directly on behalf of" an insured as those that have a contractual relationship with the insurer and those that have legal or equitable subrogation rights, and argues that because Roofer had no such contractual relationship or subrogation rights, it does not meet the statutory definition. We conclude that Allstate's reading of the statute is strained and unreasonable, and is not supported by the plain meaning of the words used. *See DISH Network Corp. v. Altomari,* 224 P.3d 362, 366 (Colo.App.2009) ("We avoid giving a forced, subtle, strained, or unusual interpretation where the [statutory] language

is plain, the meaning is clear, and no absurdity is involved.").

¶ 25 The only reasonable interpretation of the "on behalf of" language is that a first-party claimant includes those who assert, "on behalf of an insured," "an entitlement to benefits owed ... under an insurance policy." We see nothing in the statute to support Allstate's interpretation that a contractual relationship with the insurer or a right to subrogation is a prerequisite to the ability to assert a claim "on behalf of" an insured. Had the legislature intended to include such a requirement, it would have been a simple matter to do so.

¶ 26 Allstate's interpretation would require us to read into the statutory definition new requirements for contractual relationships or subrogation rights that are not contained there, and we may not do so. *See Colo. Dep't of Labor & Employment v. Esser*, 30 P.3d 189, 195–96 (Colo.2001) (court may not read words into statutory provision that would undermine General Assembly's intent).

¶ 27 Allstate next asks us to consider the effect of the following language of subsection (1)(b)(I): " 'First-party claimant' includes a public entity that has paid a claim for benefits due to an insurer's unreasonable delay or denial of the claim." According to Allstate, such public entities are included within the definition because they would have a subrogation right against the insurer. We discern nothing in this language to alter our analysis. The inclusion of such public entities merely presents one example of the types of entities that may qualify as a "first-party claimant," and in no way suggests that Roofer here may not qualify under the statutory definition.

¶ 28 Furthermore, the statute already contains specific exclusions from the definition of "first-party claimant." *See* § 10–3–1115(1)(b)(II)(A)(B) (excluding from definition of "first-party claimant" a "nonparticipating provider performing services" and a "person asserting a claim against an insured under a liability policy"). We are not at liberty to read additional exclusions into the statute. *See Esser*, 30 P.3d at 195–96; *see also Nicholas v. People*, 973 P.2d 1213, 1217 (Colo.1999) (a statute should apply to all those cases not specifically excluded from the

statute's operation when an "enumeration of exclusions" is provided (quoting 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.23, at 217 (5th ed.1992))).

¶ 29 Therefore, we reject Allstate's argument that additional categories of claimants are excluded from the statutory definition.

¶ 30 Although review of legislative history was not required given the plain language of the statute, we have reviewed it thoroughly and conclude it does not contradict our reading of the statute. Despite references by the bill's sponsor to claims by "consumers" and "insureds," the final language of the statute as enacted does not limit its applicability solely to consumers or insureds.

¶ 31 We conclude that section 10–3–1115 is unambiguous and that "first-party claimant" includes repair vendors when they assert an entitlement to benefits owed on behalf of an insured under an insurance policy. Because Roofer was "asserting an entitlement to benefits owed ... on behalf of" Allstate's insureds, we further conclude that Roofer is a first-party claimant for purposes of sections 10–3–1115 and 10–3–1116.

¶ 32 Because of our construction of sections 10–3–1115(1)(a)–(b) and 10–3–1116 to permit the filing of suit by Roofer against Allstate, we need not address the other issues raised by the parties.

¶ 33 The portion of the judgment dismissing Roofer's action under section 10–3–1116 is reversed, and the case is remanded to the trial court for further proceedings on that claim.

Judge BOORAS and Judge FOX concur.