2013 COA 169

**Roger MCCARVILLE, Plaintiff-Appellant,**

v.

**CITY OF COLORADO SPRINGS, Defendant-Appellee.**

**Court of Appeals No. 12CA2593**

Colorado Court of Appeals,
Div. V.

Announced December 5, 2013

---

El Paso County District Court No. 12CV306, Honorable Thomas K. Kane, Judge.

Roger McCarville, Pro Se

Christopher Melcher, City Attorney, Shane White, Division Chief, Colorado Springs, Colorado, for Defendant-Appellee

Opinion by JUDGE NAVARRO

¶ 1 This case presents the question whether the City of Colorado Springs (the City) may enforce its ordinances regulating the process for amending its home rule charter even though the State has also enacted a statute regulating this matter. Plaintiff, Roger McCarville, appeals the district court's judgment upholding the City's ordinances. Because the laws of the City and the State do not conflict, we hold that the ordinances may stand. We thus affirm the judgment in favor of the City.

I. Background

¶ 2 McCarville filed with the City clerk a letter demanding to petition the City's electors to amend its charter. He attached a draft of his charter amendment, which addressed several municipal issues, including: (1) the salaries and terms of office of City officials; (2) future election dates as to various City offices; and (3) the salary, qualifications, and number of municipal court judges.

¶ 3 McCarville also announced his refusal to participate in the procedures applicable to citizen initiatives outlined by the City's ordinances (e.g., attend a public meeting). He asserted, among other things, that the City's procedures apply only to initiatives to enact ordinances and not those to amend the charter. McCarville demanded that he be allowed to immediately begin collecting the signatures necessary to place his charter amendment on the ballot. Notwithstanding his demand, the clerk followed the City ordinance and scheduled his draft initiative for a

public meeting with the City's Initiative Review Committee.

¶ 4 Rather than participate in the City's process, McCarville filed an action in the district court. He asked the court to declare that the City's ordinances related to citizen-initiated charter amendments conflict with the Colorado Constitution and related statutes. He also requested injunctive relief. The City moved for summary judgment on the ground that its process for initiated charter amendments is consistent with the applicable constitutional and statutory provisions. The district court granted the City's motion, and McCarville brought this appeal.

## II. Analysis

### A. Summary Judgment Standards

¶ 5 We review de novo the grant of summary judgment. *Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.*, 2012 COA 160, ¶ 8, 305 P.3d 409. Summary judgment should be granted only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* Here, the parties agree that no disputed issue of fact exists and that this case presents purely a question of law that we review de novo. *See, e.g., Trinen v. City & Cnty. of Denver*, 53 P.3d 754, 757 (Colo.App.2002) ("We review *de novo* the constitutionality of a municipal enactment.").

### B. The State and the City's Authority To Regulate Amendments to a Home Rule Charter

¶ 6 McCarville contends that the City's ordinances related to charter amendments violate the Colorado Constitution because the constitution permits only the General Assembly to legislate on this matter. He argues further that the ordinances conflict with the relevant statute, section 31–2–210, C.R.S. 2013. In response, the City maintains that, as a home rule municipality, it may enact ordinances addressing the charter amendment process because: (1) this is a matter of local concern or (2) this is a matter of mixed

state and local concern, and its ordinances do not conflict with the statute.[1]

¶ 7 "In determining the bounds of state authority vis-à-vis a home-rule municipality's," we recognize three categories of regulatory matters: "(1) matters of local concern; (2) matters of statewide concern; and (3) matters of mixed state and local concern." *Webb v. City of Black Hawk*, 2013 CO 9, ¶ 18, 295 P.3d 480. We review de novo the question of whether a particular matter is of local, state, or mixed concern. *Id.* at ¶ 16.

¶ 8 In matters of local concern, both the State and home rule city may legislate. *Id.* at ¶ 18. If the city's regulation conflicts with a statute, the city's regulation will control. *Id.* In matters of statewide concern, however, the State legislature exercises plenary authority, and a home rule city may regulate only if the constitution or statute authorizes such legislation. *Id.* Finally, in matters that involve mixed state and local concerns, both the State and the home rule city may legislate as long as their legislation does not conflict. *Id.*; *see City of Aurora v. Martin*, 181 Colo. 72, 76, 507 P.2d 868, 870 (1973) (supreme court has "rejected the idea that the mere enactment of a state statute constituted a pre-emption by the state of the matter regulated"). In the event of a conflict, the State law will control. *Webb*, ¶ 18.

¶ 9 To demonstrate that amendments to home rule charters are matters of statewide concern, McCarville points to Article XX, section 9 of the state constitution. That section states that the "general assembly shall provide by statute procedures under which the registered electors of any proposed or existing city and county, city, or town may adopt, amend, and repeal a municipal home rule charter." Colo. Const. art. XX, § 9(2).

¶ 10 To establish that home rule charter amendments are a matter of local concern or (at least) of mixed state and local concern, the City relies on Article XX, section 6 of the Colorado Constitution. This provision grants home rule municipalities the power to create and amend charters to govern local and mu-

---

1. We will discuss the details of the statute and ordinances in Part II. C of this opinion. For now, it suffices to say that both the State and the City's laws concern the process for amending the City's home rule charter.

nicipal matters. *Webb*, ¶ 17; *see* Colo. Const. art XX, § 6. Article XX, section 6 further provides that home rule municipalities shall have the power to legislate upon "[a]ll matters pertaining to municipal elections in such city or town, and to electoral votes therein on measures submitted under the charter or ordinances thereof." *See also* Colo. Const. art. V, § 1(9) (municipalities "may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation").

¶ 11 We construe Article XX, section 6 and Article V, section 1(9) of the Colorado Constitution to authorize a home rule municipality to enact legislation related to charter amendments. *See also Bruce v. City of Colorado Springs*, 252 P.3d 30, 33–34 (Colo.App. 2010) (these constitutional provisions authorize a home rule city to enact ordinances establishing the manner in which municipal legislation is exercised). As a result, even if this matter were of statewide concern, the City may regulate charter amendments so long as the City's legislation does not conflict with the State's. *See Webb*, ¶ 18 ("in matters of statewide concern ... home-rule cities may regulate only if the constitution or statute authorizes such legislation").

¶ 12 The crucial question thus becomes whether a conflict exists between the State statute and the City ordinances pertaining to charter amendments. *Cf. Martin*, 181 Colo. at 74, 507 P.2d at 869 ("The question then becomes whether the municipal ordinance and the state statute can co-exist within the city."). If there is no conflict, both the State and the City's legislation may coexist within the City, regardless of whether the legislation concerns a matter of local, state, or mixed concern. As explained below, we find no such conflict. We need not decide, therefore, whether amendments to home rule charters are matters of state, local, or mixed concern.

### C. No Conflict Between State Statute and City Ordinances

¶ 13 As discussed, both the State and the City may legislate on the matter of amendments to a home rule charter so long as their legislation does not conflict. We

conclude that the State statute and the City ordinances at issue here may coexist harmoniously.

¶ 14 We start by summarizing our analysis. Section 31–2–210 sets forth a procedure for amending a home rule charter that begins when a proponent submits a statement of intent to circulate a petition and the "text of the proposed amendment" to the clerk. But the statute does not define "proposed amendment" or provide substantive criteria for such an amendment. In this void, the City has enacted basic substantive criteria for a proposed amendment to its charter (e.g., a limitation to a single subject) as well as a process for evaluating a draft proposal's compliance with these criteria. Because one may not propose to electors an amendment that violates these criteria, a proponent does not have the text of a proposed amendment until those criteria are satisfied. After the City's compliance process is complete, the proponent may then submit a statement of intent to circulate a petition containing the text of the proposed amendment in order to commence the process outlined by the statute. In this way, the State and the City's regulations work in tandem, not in conflict.

### 1. Standard of Review and Guiding Principles

¶ 15 Statutory construction is a question of law subject to de novo review. *People v. Dinkel*, 2013 COA 19, ¶ 6, 321 P.3d 569. Our task is to ascertain and give effect to the intent of the General Assembly. *Id.* Beginning with the plain language of the statute, we look "to the statutory design as a whole, giving effect to the language of each provision and harmonizing apparent conflicts where possible." *Id.* at ¶ 7. We apply these same principles when interpreting the ordinances of local governments. *See City of Colorado Springs v. Securcare Self Storage, Inc.*, 10 P.3d 1244, 1248 (Colo.2000).

¶ 16 To reiterate, McCarville contends that the City's ordinances violate the Colorado Constitution because they conflict with a statute expressly required by the constitution. *See* Colo. Const. art. XX, § 9(2). We review de novo a constitutional challenge

to a municipal ordinance. *Kruse v. Town of Castle Rock,* 192 P.3d 591, 597 (Colo.App. 2008). Municipal ordinances are presumed constitutional. *Id.* Thus, we must uphold the ordinance unless the party challenging it proves beyond a reasonable doubt that the ordinance is unconstitutional. *Trinen,* 53 P.3d at 757.

¶ 17 In the case of a home rule municipality, a conflict between an ordinance and a statute exists only if the ordinance authorizes what the statute forbids, or forbids what the statute authorizes. *Webb,* ¶ 43; *cf. Trinen,* 53 P.3d at 757 (if the city ordinance can reasonably be construed to coexist with the constitution, that construction should be preferred).

### 2. Application

¶ 18 As part of the Municipal Home Rule Act of 1971, §§ 31–2–201 *et seq.,* C.R.S.2013, section 31–2–210(1) provides that proceedings to amend a home rule charter may begin with either a citizen-initiated petition or an ordinance submitting the proposed amendment to the registered electors of the municipality. Regarding the petition, the statute states in relevant part:

> (I) The petition process shall be commenced by filing with the clerk a statement of intent to circulate a petition, signed by at least five registered electors of the municipality. The petition shall be circulated for a period not to exceed ninety days from the date of filing of the statement of intent and shall be filed with the clerk before the close of business on the ninetieth day from said date of filing or on the next business day when said ninetieth day is a Saturday, Sunday, or legal holiday.
>
> (II) The petition shall contain the text of the proposed amendment and shall state whether the proposed amendment is sought to be submitted at the next regular election or at a special election. If the amendment is sought to be submitted at a special election, the petition shall state an approximate date for such special election, subject to the provisions of subparagraph

(IV) of this paragraph (a) and subsection (4) of this section.

§ 31–2–210(1)(a). The statute also prescribes the minimum number of petition signatures necessary to place the proposed amendment on the ballot. *See* § 31–2–210(1)(a)(III)–(IV).

¶ 19 A proponent thus begins the statutory process by filing with the clerk a signed statement of intent to circulate a petition and the petition itself, which "shall contain the text of the proposed amendment." § 31–2–210(1)(a)(II). This statutory process cannot commence, therefore, until the proponent submits the text of the proposed amendment. Yet, the Municipal Home Rule Act does not define "proposed amendment" or otherwise prescribe the substantive criteria of such an amendment. Hence, the statute leaves room for a home rule municipality to establish the criteria of a proposed amendment to its charter. *Cf.* Colo. Const. art. XX, § 6 (giving home rule municipalities all the powers of the General Assembly with regard to municipal electoral matters); Colo. Const. art. V, § 1(9) (municipalities "may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation").

¶ 20 Here, the City has exercised its authority to establish minimum requirements of a proposed charter amendment. The City has also declared that its regulations regarding charter amendments are governed by, and are intended to be consistent with, the Municipal Home Rule Act. *See* Charter of the City of Colorado Springs § 15–50; City of Colorado Springs Municipal Code (the City Code) § 5.1.502.

¶ 21 In section 5.1.503(A) of the City Code, the City Council found that a "single subject limitation on initiatives submitted for voter approval," including charter amendments,[2] is necessary to prohibit the practice of "log rolling" and to "facilitate[ ] concentration on the meaning and wisdom of the proposal[,] preventing surprise and deception as to the matter being put to a vote." Section 5.1.503(B) of the City Code thus mandates that "initiatives contain only single subjects.... Matters proposed for submission

---

2. *See* City Code § 5.1.501.

to the electorate must be necessarily or properly connected and not disconnected or incongruous." The City's single-subject ordinance is a valid exercise of its home rule authority. *Bruce*, 252 P.3d at 32–34.

¶ 22 In the same ordinance, the City also requires that "initiatives contain only legislative matters as authorized by the Colorado Constitution and City Charter." City Code § 5.1.503(C). If a draft initiative contains administrative matters, they must be severed from the draft. *Id.* This too is an appropriate exercise of the City's authority because "[i]f the proposed initiatives are administrative, they may not be placed on the ballot pursuant to the people's initiative power." *Vagneur v. City of Aspen*, 2013 CO 13, ¶¶ 33, 36, 295 P.3d 493 (powers of initiative and referendum reserved to the people under article V, section 1 of the state constitution "do not encompass the right to petition for an election on administrative matters").

¶ 23 To enforce compliance with these requirements, the City created an Initiative Review Committee and a Title Board. *See* City Code §§ 5.1.505–507. These entities are charged with ensuring that initiatives contain only single subjects and only legislative matters. City Code § 5.1.503. After the proponent submits a draft initiative to the clerk, the draft is immediately presented to the Initiative Review Committee, which then renders comments at a public meeting within ten days. City Code § 5.1.506. After this public meeting, the proponent may revise the draft. The original draft and any revisions are then returned to the clerk for submission to the Title Board, which shall be convened within ten days. *Id.*[3] If the Title Board determines that the draft initiative complies with applicable law, the Title Board then fixes a "petition title" at a public meeting. City Code § 5.1.507. The petition title is the "[t]itle of the petition set by the Title Board prior to circulation for signatures from registered electors of the City that accurately and fairly expresses the true intent and meaning of the proposed text of the initiative." City Code § 5.1.501 (distinguishing "petition title" from "ballot title"). The final language of the initiative, along with the petition title, are immediately delivered by the clerk to the proponent. City Code § 5.1.507.[4]

¶ 24 After the Title Board sets a petition title on the final draft of the initiative— thereby signaling that the initiative satisfies the single-subject and legislative-matters requirements—the proponent possesses the text of the proposed amendment. If the proponent accepts this text, the proponent may then file with the clerk a statement of intent to circulate a petition as well as the petition containing the text of the proposed amendment. Such a filing commences the process outlined in section 31–2–210(1)(a), including the period for circulating the petition ("not to exceed ninety days").

¶ 25 In sum, the City's requirements limit the subject matter of a proposed amendment to its charter. A proponent may not, for instance, propose to amend the City's charter via an initiative containing more than one subject; thus, multiple subjects may not be the subject of a proposed amendment. For that reason, a draft initiative containing multiple subjects does not constitute a "proposed amendment" within the meaning of section 31–2– 210 (1)(a). Stated differently, because the City has enacted minimum requirements for a charter amendment, a draft initiative that has yet to be deemed compliant with these requirements does not commence the statutory procedure for amending the charter. Only an initiative complying with the City's criteria may qualify as a "proposed amendment" that begins the statutory procedure. Because the process set forth by City ordinances precedes and complements the procedure outlined by statute, the ordinances do not conflict with section 31–2–210(1)(a).

¶ 26 Indeed, the City's process for assessing a draft initiative's compliance with the single-subject requirement *prior* to the circulation of a petition comports with the State's

---

**3.** If the Initiative Review Committee and the proponent cannot reach agreement on the draft, the Committee's comments are given to the clerk for referral to the Title Board. City Code § 5.1.506.

**4.** If the proponent is dissatisfied with the Title Board's decision or petition title, the proponent may seek rehearing and, ultimately, review in the district court. City Code § 5.1.507.

procedure for determining compliance with the Colorado Constitution's single-subject requirement for initiatives. *See* Colo. Const. art. V, § 1(5.5) ("No measure shall be proposed by petition containing more than one subject"); *In re Proposed Initiative Bingo–Raffle Licensees*, 915 P.2d 1320, 1323–24 (Colo.1996) ("to aid electors in seeking to exercise the right to initiate constitutional amendments, the [Title] Board has the duty to designate and fix a title, ballot title and submission clause, and summary for initiated petitions *before* they are signed by electors") (emphasis added). Like the State, the City assures compliance with its single-subject requirement before the initiative proponent goes through the effort and expense of gathering signatures on the petition. *See also Bingo–Raffle Licensees*, 915 P.2d at 1324 ("purpose of the title setting process is to ensure that persons reviewing the initiative petition and voters are fairly advised of the import of the proposed amendment").

¶ 27 Accordingly, we conclude that the City's ordinances pertaining to a citizen-initiated charter amendment do not conflict with section 31–2–210(1)(a). The ordinances may coexist with the statute within the City.

### III. Conclusion

¶ 28 The judgment is affirmed.

JUDGE GRAHAM and JUDGE RICHMAN concur.