The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 17, 2018

## 2018COA73

No. 17CA0462, *Wal-Mart Stores, Inc. v. Pikes Peak Rural Transportation Authority* — Transportation — Regional Transportation Authority Law; Municipal Law — Home Rule Cities

A division of the court of appeals interprets and applies the Regional Transportation Authority Law, sections 43-4-601 to -621, C.R.S. 2017, to conclude that a municipality cannot remove property from the boundaries of a regional transportation authority simply by annexing the property. The division determines that section 43-4-605(2), C.R.S. 2017, provides the exclusive means to remove property from the boundaries of a regional transportation authority after it is created under section 43-4-603, C.R.S. 2017.

The division also concludes that article XX, section 6 of the Colorado Constitution does not preempt a regional transportation authority's power to tax within the boundaries of a home-rule city

because state and local taxation schemes, including sales taxes to fund transportation projects, are matters of mixed state and local concern that can coexist in a home-rule city without giving rise to a conflict.

The division therefore affirms the judgment of the district court.

Court of Appeals No. 17CA0462
City and County of Denver District Court No. 15CV33347
Honorable Michael A. Martinez, Judge

Wal-Mart Stores, Inc., a Delaware corporation; and Sam's West, Inc., an Arkansas corporation,

Plaintiffs-Appellants,

v.

Pikes Peak Rural Transportation Authority and Colorado Department of Revenue,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE VOGT*
Berger and Plank*, JJ., concur

Announced May 17, 2018

Greenberg Traurig LLP, Brian L. Duffy, Naomi G. Beer, Tyler D. Coombe, John K. Crisham, Denver, Colorado; Brownstein Hyatt Farber Shreck LLP, Martha L. Fitzgerald, Denver, Colorado, for Plaintiffs-Appellants

Carver Schwartz McNab Kamper & Forbes, LLC, Peter C. Forbes, Denver, Colorado; Icenogle Seaver Pogue, PC, Jennifer L. Ivey, Denver, Colorado, for Defendant-Appellee Pikes Peak Rural Transportation Authority

Cynthia H. Coffman, Attorney General, Scott R. Bauer, Senior Assistant Attorney General, Benjamin Kapnik, Assistant Attorney General, Denver, Colorado, for Defendant-Appellee Colorado Department of Revenue

Wynetta P. Massey, City Attorney, Anne H. Turner, Senior Assistant City Attorney, Colorado Springs, Colorado, for Amicus Curiae City of Colorado Springs

Troy Johnson, City Attorney, Fountain, Colorado, for Amicus Curiae City of Fountain

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1 In 2014, the City of Fountain annexed a parcel of vacant land (the Property) from unincorporated El Paso County. After the Pikes Peak Rural Transportation Authority announced its intention to collect a 1% sales tax from recently built retail businesses on the Property, the operators of the businesses, WalMart Stores, Inc., and Sam's West, Inc., filed a declaratory judgment action against the Authority and the Colorado Department of Revenue (DOR). They sought a declaration that defendants could not collect sales and use taxes on the Property because the Property was now a part of Fountain, which was not a member of the Authority.

¶ 2 Resolution of the issue presented required answers to two questions: first, can a municipality remove property from the boundaries of a regional transportation authority simply by annexing the property; and second, is such authority's statutory power to tax preempted by article XX, section 6 of the Colorado Constitution, which gives home-rule cities the power to collect sales taxes within their own borders?

¶ 3 The district court answered both questions "no," as do we. We therefore affirm the judgment in favor of defendants.

## I. Background

¶ 4    Colorado's Regional Transportation Authority Law (RTA Law), sections 43-4-601 to -621, C.R.S. 2017, allows municipalities, counties, special districts, and the state to combine to provide regional transportation services and to collect sales and use taxes to pay for such services.  §§ 43-4-602(4), -605(1)(j)(I), C.R.S. 2017. The Authority was established in accordance with the RTA Law in 2004, pursuant to an intergovernmental agreement (IGA) among El Paso County and various municipalities in the county.  The Property at issue here was in unincorporated El Paso County in 2004 and thus was within the boundaries of the Authority.

¶ 5    The Authority collects a 1% sales tax on retail sales within its boundaries and uses the tax revenues for transportation projects. Among other projects, it has spent $25,000,000 on improvements to Highway 83, which runs adjacent to the Property.

¶ 6    Fountain, a home-rule city in El Paso County, has never been a member of the Authority.  After Fountain annexed the Property in 2014, defendants opened stores on the previously undeveloped Property.  As Fountain businesses, the stores were required to

collect and remit to the city a 3% Fountain sales and use tax and a .75% Fountain transportation tax.

¶ 7 The DOR collects sales tax on behalf of both Fountain and the Authority.

¶ 8 Plaintiffs filed a complaint seeking a declaratory judgment that the Authority and the DOR could not collect a tax from the stores because (1) upon annexation by Fountain, the Property was removed from the Authority's territory and thus was not subject to taxation by the Authority; and, (2) as a home-rule city with plenary taxation powers, Fountain had the sole authority to levy sales taxes on the annexed Property. Defendants counterclaimed, asserting that Fountain's annexation did not remove the Property from the Authority's territory, and that the city's plenary tax power did not preclude additional taxation. Agreeing that there were no disputed issues of material fact, the parties filed cross-motions for summary judgment. In a detailed written order, the district court denied plaintiffs' motion and entered summary judgment for defendants.

## II. Analysis

### A. Standard of Review and Controlling Legal Principles

¶ 9 This is an appeal of a summary judgment, and it involves questions of statutory interpretation. Our review is thus de novo. *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11 (summary judgment); *Goodman v. Heritage Builders, Inc.*, 2017 CO 13, ¶ 5 (statutory interpretation).

¶ 10 Summary judgment is appropriate when the pleadings and supporting documentation show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Andersen v. Lindenbaum*, 160 P.3d 237, 239 (Colo. 2007).

¶ 11 In interpreting a statute, we must ascertain and give effect to the legislature's intent. *Colo. Dep't of Revenue v. Creager Mercantile Co.*, 2017 CO 41M, ¶ 16. We give words and phrases their plain and ordinary meanings, and we construe the entire statutory scheme to give consistent, harmonious, and sensible effect to all its parts. *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011). If a statute's language is clear, we apply it as written; but if

the statutory language is ambiguous, we may use other tools of statutory interpretation to determine legislative intent. *Id.*

### B. Annexation and the RTA Law

¶ 12 Plaintiffs contend that Fountain's annexation of the Property removed the Property from the Authority's boundaries, and that the Authority's attempt to tax retail sales outside its boundaries violates the RTA Law. We disagree.

### 1. Effect of Fountain's Annexation

¶ 13 We first consider whether Fountain's annexation, without more, removed the Property from the Authority's boundaries.

¶ 14 A municipality, such as Fountain, may annex property from unincorporated parts of the county in which it lies in accordance with Colorado Constitution article II, section 30 and the Municipal Annexation Act of 1965, sections 31-12-101 to -123, C.R.S. 2017. *See Town of Superior v. Midcities Co.*, 933 P.2d 596, 600 (Colo. 1997). Thus, Fountain's annexation of the Property in 2014 served to detach it from unincorporated El Paso County and make it a part of Fountain.

¶ 15 However, a municipality's annexation power does not permit it automatically to remove territory from other political subdivisions of

the state (such as regional transportation authorities; *see* § 43-4-602(1.5), C.R.S. 2017), particularly where removal of territory from such political subdivisions is governed by other statutory provisions. "[A] municipality cannot accomplish by mere annexation what is illegal or statutorily impermissible." *Bd. of Trustees of Town of Wellington v. Bd. of Trustees of Fort Collins Reg'l Library Dist.*, 216 P.3d 611, 613 (Colo. App. 2009) (city's annexation of property did not automatically remove the property from library district; rather, property could be removed only in accordance with specific provisions of library law); *see also Valley Water Dist. v. City of Littleton*, 32 Colo. App. 286, 288, 512 P.2d 644, 645 (1973) (city's annexation of portion of territory served by water district did not make city responsible for providing water service in the annexed area).

¶ 16    We thus conclude that although Fountain's annexation of the Property removed it from unincorporated El Paso County, that annexation did not remove the Property from the boundaries of the Authority.

## 2.　The RTA Law

¶ 17　We next consider whether the Property must nevertheless be deemed to be outside the Authority's boundaries, and thus not subject to the Authority's taxes, under the RTA Law.

¶ 18　The RTA Law gives an authority the power to impose a sales tax, use tax, or both, within its boundaries, provided that a majority of voters within the area to be taxed approve the proposed tax. §§ 43-4-605(1)(j)(I), -612(1), C.R.S. 2017.　The Authority's 1% sales tax at issue here was approved by the voters in 2004.　As part of unincorporated El Paso County, the Property was within the Authority's boundaries at that time and thus subject to the tax, although there was then no commercial activity on the Property to be taxed.

¶ 19　Plaintiffs contend that, under section 43-4-603(2)(d) of the RTA Law, the Property is no longer within the boundaries of the Authority since its annexation by Fountain.　The subsection on which plaintiffs rely, part of a section of the RTA Law captioned "Creation of authorities," states in relevant part that

> (2) Any contract establishing an authority shall specify:

. . . .

> (d) The boundaries of the authority, *which may not include territory outside of the boundaries of the members of the combination,* may not include territory within the boundaries of a municipality that is not a member of the combination as the boundaries of the municipality exist on the date the authority is created without the consent of the governing body of such municipality, and may not include territory within the unincorporated boundaries of a county that is not a member of the combination as the unincorporated boundaries of the county exist on the date the authority is created without the consent of the governing body of such county.

(Emphasis added.)

¶ 20    Plaintiffs read the emphasized portion above as ending the analysis because the Property is located in Fountain, and Fountain is not a combination member. Defendants respond that the subsection defines the territorial restrictions applicable when a transportation authority is *created,* and that the subsection, read as a whole, requires a contract creating such an authority to specify boundaries that (1) may not include land outside of the combination members' borders; and, (2) if land within a member's (e.g., El Paso County's) borders is also inside a nonmember municipality (e.g., Fountain), may not include such land without

8

the municipality's consent. In the latter situation, the relevant municipal boundaries are those that "exist on the date the authority is created."

¶ 21    We agree with defendants. Reading subsection 603(2)(d) as a whole and in its context, we conclude that the legislature intended the subsection to define the boundaries of an authority at its creation, not to define requirements for changing those boundaries thereafter. We reach this conclusion for several reasons.

¶ 22    First, as noted, section 42-4-603 is captioned "Creation of authorities." *See Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 936 (Colo. 2010) (headings in a statute can aid in determining legislative intent). Its subsections deal with the requirements for contracts creating transportation authorities, not with requirements for authorities already in existence.

¶ 23    Second, the language in subsection 603(2)(d) referring to the boundaries of a municipality "as [they] exist on the date the authority is created" is clear and unambiguous, and it is the same language used in other sections of the RTA Law. *See* § 42-4-605(1)(f) (limitations on territory in which regional transportation systems may be operated); § 42-4-605(1)(j)(I)

(limitations on territory within which sales or use tax may be levied). The legislature's use of such specific language suggests that it was aware that municipal boundaries frequently change, and that there needed to be some certainty as to the territory in which a regional transportation authority could operate.

¶ 24    Third and most important, the General Assembly included in the RTA Law a specific provision addressing how territory may be removed from an authority once the authority is established. Section 43-4-605(2) spells out how the authority's board of directors may include or exclude property from the boundaries of the authority. The statute requires notice and a public hearing, after which the board may, by two-thirds vote, adopt a resolution including or excluding all or any portion of the property described in the notice. § 43-4-605(2)(b)(I), (II). It is undisputed that the procedure spelled out in section 43-4-605(2) was not followed in this case.

¶ 25    In sum: The Property was within the boundaries of the Authority when the Authority was created. Fountain's annexation of the Property did not remove it from the boundaries of the Authority. Rather, like the library law in *Town of Wellington,* the

RTA Law provides a single method to remove property from an authority's boundaries after the authority is formed; but that method was not followed. 216 P.3d at 615. Contrary to the arguments first advanced by plaintiffs in their reply brief and at oral argument, nothing in the IGA creating the Authority warrants a contrary conclusion. Thus, the Property remains within the Authority's boundaries and is subject to taxation by the Authority.

C.     Preemption under Article XX of the Colorado Constitution

¶ 26     Plaintiffs further contend that the Authority's statutory power to tax is preempted by article XX, section 6 of the Colorado Constitution, which they say gives home-rule cities "plenary" and "sole" authority over local concerns such as municipal taxation and supersedes state statutes that conflict with local laws in those areas. We again disagree.

1.     Additional Background

¶ 27     Colorado Constitution article XX, section 6 states that home-rule cities have power over "local and municipal matters," and that their charters and ordinances in such matters "shall supersede within the territorial limits [of such cities] any law of the state in conflict therewith." Article XX, section 6(g) states that a

11

home-rule city's powers include the power to levy and collect taxes on city property for municipal purposes. The Fountain city charter authorizes the city council "to levy general sales taxes, selective sales taxes, and use taxes, or any combination of said taxes, or any other taxes permitted by law." City of Fountain Charter art. IX, § 9.3(d). As stipulated by the parties here, the city council has imposed a 3% sales and use tax and a .75% transportation tax on businesses operating within Fountain's borders

¶ 28 Under section 43-4-605(1)(j)(I) of the RTA Law, a regional transportation authority is allowed "to levy, in all or any designated portion of the members of the combination, a sales or use tax, or both, at a rate not to exceed one percent upon every transaction or other incident with respect to which a sales or use tax is levied by the state. . . . The tax imposed pursuant to this paragraph (j) is in addition to any other sales or use tax imposed pursuant to law." The Authority cites this provision as the basis for its right to impose a 1% sales tax on transactions within its boundaries, including transactions on the Property.

¶ 29 To ensure home-rule cities their constitutionally guaranteed independence from state control in their internal affairs, our

supreme court has consistently held that, in matters of local concern, a home-rule ordinance supersedes a conflicting state statute; but when a home-rule ordinance conflicts with state law in a matter of either statewide or mixed state and local concern, the state law supersedes that conflicting ordinance. *City of Longmont v. Colo. Oil & Gas Ass'n*, 2016 CO 29, ¶¶ 17-18. In matters of statewide or mixed concern, local ordinances may coexist with state statutes as long as the local ordinance and the state statute do not conflict. *Id.* at ¶ 18.

### 2.     Application

¶ 30    To prevail on this contention, plaintiffs would need to establish that imposition of a sales tax on the Property to pay for transportation projects is a matter of purely local concern, and that the state statute granting the Authority the right to impose such a tax "in addition to any other sales or use tax imposed pursuant to law" conflicts with Fountain's power to impose such a tax. They have done neither.

¶ 31    First, Colorado case law has long recognized that transportation regulation generally, including the establishment of transportation systems, is a matter of mixed local and state

concern.  *See Webb v. City of Black Hawk*, 2013 CO 9, ¶¶ 30-31, 42 (both home-rule cities and the state have an interest in traffic regulation, which is a matter of mixed state and local concern; thus, state statute preempted city's conflicting bicycle ordinance); *City of Commerce City v. State*, 40 P.3d 1273, 1284 (Colo. 2002) (in rejecting home-rule city's argument that traffic enforcement in city was a matter of purely local concern and that state law regulating automated vehicle registration systems unconstitutionally infringed on city's power, supreme court held that the state law addressed a matter of mixed state and local concern, and noted that "although our constitution assigns a power to home-rule municipalities in a general way, this does not necessarily mean that the matter is a strictly local issue"); *Anema v. Transit Constr. Auth.*, 788 P.2d 1261, 1266 (Colo. 1990) (state law creating an authority to establish a rapid transit system in Denver addressed a matter of mixed statewide and local concern); *see also People v. Graham*, 107 Colo. 202, 205, 110 P.2d 256, 257 (1941) (rejecting argument that state could not regulate motor vehicle traffic in home-rule city, and observing: "As motor vehicle traffic in the state and between home-rule municipalities becomes more and more integrated it

14

gradually ceases to be a 'local' matter and becomes subject to general law.").

¶ 32     Second, Colorado Constitution article XX, section 6 does not give home-rule cities "sole" authority over taxation within their boundaries, as plaintiffs contend.  Rather, as recognized by our supreme court, state and local taxation schemes, including sales taxes to fund transportation projects, can coexist in a home-rule city without giving rise to a conflict.  *See Berman v. City & Cty. of Denver*, 156 Colo. 538, 544, 400 P.2d 434, 438 (1965) ("[C]ases decided by this court conclusively establish that . . . state taxation in the same field as that of a municipality can co-exist."); *see also City of Aurora v. Aurora Sanitation Dist.*, 112 Colo. 406, 409, 149 P.2d 662, 663 (1944) (in rejecting home-rule city's challenge to creation of sanitation district within city's boundaries, court discussed its previous case law holding that legislature had "right to authorize the formation of quasi-municipal districts, with the power to tax for their special purposes, which might embrace or include cities and towns within their boundaries"); *Milheim v. Moffat Tunnel Improvement Dist.*, 72 Colo. 268, 280, 211 P. 649, 654 (1922) (Colorado Constitution article XX did not limit power of legislature

to create an improvement district including the City and County of Denver and to grant that district the power to levy assessments in Denver).

¶ 33    Here, the record shows that at least one transportation project funded by the Authority's sales tax (the $25,000,000 in improvements to Highway 83) directly benefits the Property. Further, the IGA creating the Authority provides that voter-approved sales tax revenues must be spent on roadway capital improvements, maintenance and operations, and transit service within the Authority's boundaries, and that "[s]uch projects shall be compatible with established state and local transportation plans" for the transport of people and goods in or through El Paso County.

¶ 34    Plaintiffs do not explain how the Authority's use of sales tax revenues for these purposes conflicts with Fountain's right to levy and collect taxes. Although plaintiffs complain that permitting the Authority to impose its sales tax on businesses in the Property will force Fountain taxpayers to "divert dollars that would otherwise go to a wide variety of areas (including transportation)" in Fountain, they do not dispute that Fountain still collects its own sales-and-

use and transportation taxes on all eligible transactions occurring in that city.

¶ 35    In these circumstances, we conclude, as did the district court, that provision of transportation services to the Property, and imposition of taxes to pay for such services, is not a purely local concern that, under article XX, section 6, would supersede any conflicting state law.  Nor have plaintiffs established that there is a conflict between Fountain's right to impose its own taxes and the Authority's imposition of sales tax on the Property in accordance with section 43-4-605(1)(j)(I).  Thus, the district court did not err in rejecting plaintiffs' preemption argument and concluding that the Authority's sales tax on eligible transactions on the Property was valid.

¶ 36    Finally, we reject plaintiffs' argument that the district court erred by failing to address all of the factors frequently considered by the courts in determining whether an issue is a matter of local, mixed, or state interest.  *See Ryals v. City of Englewood*, 2016 CO 8, ¶ 13 (relevant factors include the need for statewide uniformity, the extraterritorial impact of the regulation at issue, whether the matter has traditionally been regulated at the state or local level, and

whether the Colorado Constitution commits the matter to state or local regulation).

¶ 37    First, the district court's analysis, with which we agree, recognizes that imposition of sales taxes to fund transportation projects is neither a matter traditionally regulated only at the local level nor a matter committed exclusively to either state or local regulation by the Colorado Constitution.  Plaintiffs have not demonstrated that application of the remaining two *Ryals* factors would have warranted a different conclusion.  Second, the district court found, and we agree, that there was no conflict between Fountain's right of municipal taxation and the Authority's imposition of sales taxes.  A division of this court has recognized that, in such circumstances, it is unnecessary to decide whether the matters at issue are of local, mixed, or state concern.  *See McCarville v. City of Colorado Springs*, 2013 COA 169, ¶ 12 (where there is no conflict, state and local legislation may coexist, and court need not decide whether provisions at issue were matters of state, local, or mixed concern).

## III.   Conclusion

¶ 38    The judgment is affirmed.

18

JUDGE BERGER and JUDGE PLANK concur.